Paul Kermit COSTNER, Jr.,
Plaintiff-Appellee,

v.

The BLOUNT NATIONAL BANK OF MARYVILLE, TENNESSEE,
Defendant-Appellant.

No. 76–2515.

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1978.

Decided June 29, 1978.

Jackson C. Kramer, James A. Ridley, III, David E. Rodgers, Kramer, Johnson, Rayson, Greenwood & McVeigh, Knoxville, Tenn., for defendant-appellant.

Norman H. Williams, J. Edward Ingram, Fowler, Rowntree, Fowler & Robertson, Knoxville, Tenn., for plaintiff-appellee.

Before LIVELY and MERRITT, Circuit Judges, and RUBIN, District Judge.*

MERRITT, Circuit Judge.

## I. STATEMENT OF THE CASE

A jury found the defendant bank civilly liable for violating the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972 and the Sherman Act, 15 U.S.C. § 1. The Bank Holding Company Act in essence applies the general anti-tying principles of the Sherman Act to the context of commercial banking, by prohibiting a bank, when it makes a loan, from requiring in return some business or service to the bank other than the usual obligations directly related to ensuring timely repayment of the loan. A damage award of $60,000 was trebled by the District Court in accordance with both acts.

The tying arrangement was created when the plaintiff Costner, owner of 50% of the stock in an automobile dealership, obtained a $420,000 personal loan from the defendant bank to buy the remaining stock in the company. Costner pledged all of the stock to secure repayment of the loan. The loan agreement imposed several conditions affecting the operation of the business, including a requirement that the corporation sell a substantial share of its retail commercial automobile installment paper to the bank, and that it employ a person designated by the bank to ensure compliance with the tying arrangement.

On appeal, the bank concedes that the agreement violated the Bank Holding Company Act. Its major contentions are that the illegal tying arrangement did not damage the plaintiff and did not sufficiently affect interstate commerce to constitute a violation of the Sherman Act. We affirm the decision below.

The uncontroverted evidence shows that the automobile dealership experienced financial difficulties, and approximately eighteen months after the loan agreement and tying arrangement were entered into, the bank demanded payment of the personal loan. Threatened with foreclosure of the stock he had pledged as collateral for the loan, the plaintiff assigned his stock to the bank under an agreement which allowed the bank to find a purchaser for the stock at a price to be determined by the bank in negotiations with the purchaser. The bank agreed, in exchange, to make certain payments and to cancel the plaintiff's obligation to pay off the principal balance of the loan plus another personal loan, for a total value of approximately $420,000. The bank vice president who had handled the plaintiff's loan then sold the automobile dealership to a group headed by his brother for a price which did not return to plaintiff any value above the value of the cancellation of the indebtedness.

## II. CAUSATION

The plaintiff's theory of causation and damage was that the tying arrangement increased the costs of doing business and that this fact, among others, led to the decline of the business. The decline of the

---

\* Honorable Carl B. Rubin, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

business in turn put the bank in a position to call the loan and to force the plaintiff to sell the business to the vice president's brother for a price considerably below the fair market value of the business. The jury award of $60,000 indicates that the jury accepted the plaintiff's theory.

The bank agrees that the jury instructions given by the district court were correct, and the bank does not object to any of the evidentiary rulings of the district court. The bank argues rather that the plaintiff's theory of causation and the evidence introduced to support it were insufficient to permit a jury finding that the illegal tying arrangement caused damage to the plaintiff.

We have reviewed the record and the evidence presented to the jury and, like the District Court, we are unable to say that the evidence was insufficient to justify a finding of causation by the jury. There was evidence that general economic conditions and poor management caused a decline in plaintiff's business, but there was also evidence that the illegal tying arrangements contributed to the decline. In cases of this kind, it is for the jury, as the trier of facts, to determine the question of causation. We cannot say under the circumstances that the jury's verdict was unfair and should be set aside.

## III. STANDING

The bank's argument that the plaintiff has no standing to claim damages turns on a preliminary finding of fact, and the district court put that question of fact to the jury in its instructions:

However, plaintiff would not be entitled to damages solely upon a finding by the jury that the tying arrangement resulted in damages to the car dealership. . . . If plaintiff is to recover he must prove that as a result of the tying arrangement the sale of his stock in the corporation was for less than its fair market value at the time. The injury to the stockholder must be direct and not merely consequential or derivative through the corporation. Depreciation in the value of the stock that occurred before the sale of the stock because of injuries directly affecting the corporation rather than the shareholder cannot be recovered. The sale of the stock must result in further loss to the shareholder and not merely substitute the already depreciated value of the stock for money of equal value.

The District Court apparently gave this charge to the jury upon the submission of the bank, and we believe there is sufficient evidence to justify a finding that the plaintiff, as distinct from the automobile dealership, suffered direct damage as a result of the illegal tying arrangement. *See Perkins v. Standard Oil Co.*, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); *Pogue v. International Industries, Inc.*, 524 F.2d 342 (6th Cir. 1975).

## IV. SUFFICIENCY OF THE EVIDENCE UNDER THE SHERMAN ACT

The bank contends that there was insufficient evidence to warrant submitting the plaintiff's Sherman Act claim to the jury. To show a *per se* violation of the Sherman Act, a plaintiff must demonstrate that the defendant possesses "appreciable economic power" in the market for the tying product and that the tying arrangement affects a "not insubstantial" amount of commerce in the tied product. *U. S. Steel Corp. v. Fortner Enterprises*, 429 U.S. 610, 611–612, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977) (*Fortner II*). In this case, the tying product is credit and the tied product is the automobile dealership's consumer commercial paper. The District Court gave a full and accurate charge to the jury, setting out the elements which had to be proved in order to find a violation of the Sherman Act. The bank does not assert that the jury instructions were erroneous, but rather that the evidence was insufficient to go to the jury.

We believe it is clear that the plaintiff presented sufficient evidence to support a finding that a "not insubstantial" amount of commerce was affected. The bank's answers to interrogatories show that

the volume of consumer automobile paper purchased by the bank from the corporation during relevant periods was as follows:

| DATE | VOLUME NUMBER | AMOUNT |
|---|---|---|
| 9–21–73 to 12–31–73 | 104 | $ 362,509.97 |
| 1– 1–74 to 12–31–74 | 524 | $1,855,748.59 |
| 1– 1–75 to 2– 5–75 | 41 | $ 135,525.34 |

In *Fortner Enterprises v. United States Steel Corp.*, 394 U.S. 495, 502, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (*Fortner I*) the Supreme Court held that even when the total volume of tied sales amounted to only $190,000, a not insubstantial volume of commerce was affected.

The question of economic power in the credit market presents a somewhat more difficult problem. The plaintiff was not required to show that the bank had a monopoly or even a dominant position in the market (*Fortner I*, 394 U.S. at 502, 89 S.Ct. 1252). However, the plaintiff was required to show the type of "leverage" or economic power which would allow the bank to "raise prices or to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market." (*Fortner II*, 429 U.S. at 618, 620, 97 S.Ct. 861, 867). Certainly, there is evidence in the record that the defendant bank was able to impose unusual and burdensome conditions on the plaintiff as a condition to granting the loan. The record also indicates that the defendant was one of two banks in the community that competed for business with Costner. Finally, it appears that the plaintiff's efforts during 1973–74 to obtain additional credit or arrange outside investment in the company from other sources were not successful.

■ Although the evidence on the bank's economic leverage was therefore weak, we are reluctant to conclude that it was insufficient as a matter of law to warrant submission to the jury. However, a definitive resolution of this question is unnecessary because we are unable to see how the bank was prejudiced even if submission of the Sherman Act claim to the jury was incorrect. The bank was also sued under the Bank Holding Company Act, which establishes a *per se* rule and provides the same penalties for tying arrangements as the Sherman Act, but without the necessity of proving any economic power in the market for the tying product:

> Because of their inherent anticompetitive effects, which may operate to the detriment of bank customers as well as banking and nonbanking competitors, tying arrangements involving a bank are made unlawful by this section without any showing of specific adverse effects on competition or other restraints of trade and without any showing of some degree of bank dominance or control over the tying product or service. Moreover, as individual tying arrangements may involve only relatively small amounts, the prohibitions of this section are applicable regardless of the amount of commerce involved.

[Sen.Rep. No. 97–1084, 91st Cong., 1st Sess. (1970), [1970] U.S.Code Cong. & Admin.News 5519, 5558 (Supplementary Views of Edward W. Brooke)].

We believe, therefore, that even if the evidence of market power and effect on interstate commerce were insufficient to warrant submission of the Sherman Act claim to the jury, the District Court's failure to direct a verdict on that claim was harmless error, particularly in light of the fact that the jury charge was in all respects correct. The verdict would have been the same if the Bank Holding Company Act alone had been submitted.

Accordingly, we decline to set aside the jury verdict in this case and affirm the judgment of the District Court.