Arthur **SWERDLOFF** and Louis Swerdloff, Plaintiffs-Appellants,

v.

**MIAMI NATIONAL BANK,** a National Banking Association, Defendant-Appellee.

No. 76–1919.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1978.

Rehearing Denied Dec. 18, 1978.

56

Carl H. Hoffman, Miami, Fla., for plaintiffs-appellants.

Frates, Floyd, Pearson, Stewart, Richman & Greer, Kenneth J. Weil, David J. White, James D. Little, Kenneth F. Claussen, Helli-

well, Melrose & DeWolf, William E. Sadowski, Robert J. Schaffer, Miami, Fla., for defendant-appellee.

Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

This case of first impression concerns whether the two 100% shareholders of a corporation, who were guarantors of a loan made by a bank to their corporation, have standing to bring suit against the bank under a federal law which protects bank customers from being required as a loan condition to provide additional credit, property, or service to the bank not usually required of other customers. The Bank Holding Company Act Amendments of 1970, 12 U.S.C.A. §§ 1972(3), 1975. The complaint alleged that the stockholders, not the corporation, were required to provide the prohibited "additional" service if the loan to the corporation was to be continued. The district court granted a judgment on the pleadings for the bank on the ground that the corporation, not the stockholders, was the bank's customer, so that the stockholders had no standing to enforce the statute's provisions.

Under a 1972 Accounts Receivable Financing Agreement, Miami National Bank lent money to Standard Container & Paper Co. upon the assignment of the company's receivables as collateral. Standard Container was wholly-owned by the Swerdloffs and operated as a family business. As part of the financing plan, the bank required the Swerdloffs personally to guarantee the loans. In the midst of an expansion program, after Standard Container had become heavily dependent upon the financial arrangement, Miami National advised the Swerdloffs that it would no longer honor the arrangement unless 51% of the capital stock of Standard Container was transferred to Arrow Paper & Chemical Co., Inc., one of the bank's other customers. The bank allegedly threatened to put Standard Container out of business if the Swerdloffs did not accede to the transfer.

After the Swerdloffs refused to transfer their stock, they contend that Miami National retaliated by terminating the financing arrangement. Consequently, Standard Container was forced out of business and placed in involuntary bankruptcy. Its stock became worthless and one of the plaintiffs, Arthur Swerdloff, lost his source of employment.

The Swerdloffs thereupon commenced the instant proceedings under the Bank Holding Company Act against Miami National.

Although these facts are contested by defendant bank, they must be accepted as true in a motion for judgment on the pleadings. *Stanton v. Larsh,* 239 F.2d 104 (5th Cir. 1957); Fed.R.Civ.P. 12(c). The question then is whether these facts, as alleged, state a violation of 12 U.S.C.A. § 1972(3) and whether plaintiffs have standing to bring a private civil action under 12 U.S.C.A. § 1975.

The Bank Holding Company Act prohibits a bank from conditioning credit upon the requirement that "the customer provide some additional credit, property, or service" to the bank other than that "usually provided in connection with a loan . . . ." 12 U.S.C.A. § 1972(3).[1] The Act further provides that "[a]ny person who is injured in his business or property" by a violation of that prohibition may sue for three times the damages sustained plus costs and attorney's fees. 12 U.S.C.A. § 1975.[2]

---

1. 12 U.S.C.A. § 1972(3) provides:

    A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

    (3) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service; . . .

2. 12 U.S.C.A. § 1975 reads:

Miami National contends that no violation of § 1972(3) has been stated because the alleged demands were made upon the Swerdloffs, not Standard Container, and the Swerdloffs were not "customers" within the meaning of the subsection. In any event, the bank argues there was no requirement of some additional service "to such bank" because the stock was to be transferred to Arrow Paper, not the bank.

### Swerdloffs Were Customers

Miami National argues that the Swerdloffs could not be its customers because they maintained no account and because they were not parties to the financing agreement with Standard.

Although the chapter of the Bank Holding Company Act which deals with tying arrangements contains a definitional section, no definition of the term "customer" is given. Because of the dearth of case law, it is necessary to look to the purpose of the Act and the general principles of statutory construction in construing the term.

■ Adopted in 1970, Chapter 22 of the Bank Holding Company Act, 12 U.S.C.A. §§ 1971–1978, is directed at tying arrangements involving banks. The amendment arose out of the concern "that there be adequate safeguards against the possibility of misuse of the economic power of a bank." [1970] U.S.Code Cong. & Admin.News, p. 5535. The provisions were directed at those abuses that would "lead to a lessening of competition or unfair competitive practices." They were intended "to affirm in statutory language the principles of fair competition." While the provision was expressly designed not to interfere with "the conduct of appropriate traditional banking practices,"

[t]he purpose of this provision is to prohibit anti-competitive practices which require bank customers to accept or pro-

vide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire.

*Id.*

■ The economic realities of ownership and control must be considered in determining who is a "customer" within the meaning of this section if the purpose of the Act is to be accomplished. A great deal of important business is done through closely held corporations. To decide in favor of the bank here would mean that banks throughout the country could require all manner of anticompetitive practices of the stockholders of such corporations with impunity. The law cannot be unmindful of the fact that substantial credit to such corporations is generally extended because of the credit rating of the stockholder guarantors, regardless of the credit-worthiness of the corporation itself. This credit practice recognizes that the financial fortunes of closely held corporations can turn directly upon the maneuverings of the stockholders.

■■ In the absence of a statutory definition, it is reasonable to draw upon the ordinary meaning of a word. *United States v. National Broiler Marketing Ass'n*, 550 F.2d 1380, 1386 (5th Cir. 1977), *aff'd*, 436 U.S. 816, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978). In common usage, a customer is one who has business dealings with another or who purchases a commodity or service. *See, e. g., Aiken Mills, Inc. v. United States*, 53 F.Supp. 524, 526 (E.D.S.C.1944). While the Swerdloffs did not maintain an account with Miami National, they did enter into a contract of guarantee on which they were liable. Such a transaction certainly constitutes a business dealing with a bank.

■ In this regard, the antitrust laws provide a helpful analogy. The district court noted that reference to antitrust statutes and decisions was "most pertinent" in

*Civil actions by persons injured; jurisdiction and venue; amount of recovery*

Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor in any district court of the United States in

which the defendant resides or is found or has an agent, without regard to the amount in controversy, and shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee.

view of the substantial similarity of the Acts. *Swerdloff v. Miami National Bank,* 408 F.Supp. 940, 942 (S.D.Fla.1976). In the context of an alleged unfair competition violation of section 2(d) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(d), the Second Circuit has avoided a narrow interpretation of "customer." *American News Co. v. FTC,* 300 F.2d 104, 108–110 (2d Cir. 1962), *cert. denied,* 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962). In *American News,* the court held that a "customer" within the meaning of the Act need not deal directly nor be in privity of contract as long as the seller maintains control over the price and terms of the transaction. *See also Brewer v. Uniroyal, Inc.,* 498 F.2d 973, 977 (6th Cir. 1974). Where, as here, there has been a direct relationship between the bank and purported customer, as well as privity of contract with the bank, it is reasonable to conclude that a customer relationship exists.

The reasons advanced in support of a narrow interpretation are not persuasive. There seems to be, however, an additional underlying assumption in the district court's conclusion which merits attention. It would appear that the court implicitly assumed that a bank could not have two customers in reference to one interrelated transaction. Since Standard clearly constituted a customer, it would follow that the Swerdloffs could not. There is in the Act or the policies underlying it, however, no basis for such a conclusion. Where, as here, the facts indicate that there are two or more potential customers, the claims of the parties must not be exclusively weighed against each other.

We hold that the owners of 100% of the stock of a corporation who have been required individually to guarantee the corporation's loan must be considered just as much "customers" of the bank as the corporation through which they do business for the purposes of these provisions of the Bank Holding Company Act.

*The Extra Requirement was a Service "to such bank"*

Even if we determine that the Swerdloffs are "customers," Miami National says dismissal of their complaint should be affirmed because there was no allegation that the Swerdloffs were required to furnish *the bank* with a service not related to or usually provided in connection with a loan. It argues that the failure of plaintiffs to make any allegation that sale of 51% of the shares of Standard Container to Arrow Paper would benefit the bank renders the complaint fatally defective.

In a statutory provision intended to prevent the misuse of the economic power of a bank, however, such a specific allegation at the pleading stage of the case is unnecessary. It is sufficient to allege that the bank required a customer to do an act not related to nor usually provided in connection with a loan. That there is a benefit to the bank will be implied for pleading purposes.

Support for this interpretation is found in the report of the Senate Banking and Currency Committee. The report speaks of a prohibition of the requirement of the provision of an unusual service by the customer to "the bank, the bank holding company or its subsidiary or to a business operated by one or more of the persons controlling the bank . . . ." [1970] U.S.Code Cong. & Admin.News, p. 5535. This language indicates a concern with substance rather than form. Where there is a requirement of unusual service, at least an indirect benefit to the bank will be inferred upon a motion for summary judgment.

Thus, the complaint adequately alleged a tying arrangement whereby a "customer" of Miami National was required to provide an illegal service "to such bank" in violation of 12 U.S.C.A. § 1972.

*The Swerdloffs Have Standing Under § 1975*

In view of the holding that in this loan transaction plaintiffs are customers of the bank, it is not necessary to consider

**60**

whether the plaintiffs, as stockholders, would have standing to bring suit under § 1975 were the corporation the only "customer" protected by the statute. Relying on a line of Fifth Circuit cases decided under the antitrust laws, the district court held a stockholder of an injured corporation not to be a "person" with standing to bring a private antitrust action. *Jeffrey v. Southwestern Bell,* 518 F.2d 1129, 1131 (5th Cir. 1975); *see also Mendenhall v. Fleming Co., Inc.,* 504 F.2d 879, 881 (5th Cir. 1974); *Martens v. Barrett,* 245 F.2d 844, 846 (5th Cir. 1957); *Peter v. Western Newspaper Union,* 200 F.2d 867 (5th Cir. 1953). Plaintiffs argue that the district court did not have available to it two Fifth Circuit decisions since decided which would indicate a different decision on this issue. *Tugboat, Inc. v. Mobile Towing Co.,* 534 F.2d 1172 (5th Cir. 1976); *Yoder Bros., Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347 (5th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977). We need not consider this argument. Since the Swerdloffs are customers of the bank and the prohibited additional services have been demanded of them by the bank, there is no question that they have standing to sue for the § 1972(3) violations.

It is easy to confuse the issue in this case, because the bank discontinued the corporation's credit in retaliation for the Swerdloffs' refusal to comply with its demand. Simply by demanding that the Swerdloffs sell their stock, however, the bank violated the statutory prohibition. Even if the Swerdloffs had sold their stock, the bank had continued the loan, and the corporation had prospered, the plaintiffs might still have had a cause of action under § 1975 for any damages they incurred. Any injury to the Swerdloffs, the bank's customers, could be redressed under § 1975, whether or not there had been damage to the corporation.

Miami National contends that a decision in favor of the Swerdloffs would, in effect, permit duplicative causes of action. This decision does not permit a shareholder to assert a corporation's cause of action but recognizes that an independent claim existed in favor of the shareholders. We need not consider here issues of procedure or damages which might arise should claims be filed by more than one customer because no such action is pending on behalf of the corporation.

In considering the facts and the law in this case, we have necessarily discussed facts which have not yet been proven, and may never be. The posture of the case requires us to consider whether plaintiffs could prove *any* set of facts which would permit recovery under the Act. We make no suggestion as to whether such facts can be proven in this case. We merely hold that in our view of the law sufficient facts might possibly be shown under the cause of action here alleged to permit recovery and defendant was not entitled to judgment as a matter of law at the pleading stage of the proceeding.

REVERSED AND REMANDED.