SATELLITE FINANCIAL PLANNING CORPORATION, et al., Plaintiffs,

v.

FIRST NATIONAL BANK OF WILMINGTON, et al., Defendants.

Civ. A. No. 85–463 CMW.

United States District Court, D. Delaware.

Sept. 8, 1986.

See also, D.C., 646 F.Supp. 118.

James F. Harker of Herlihy & Wier, Wilmington, Del., for plaintiffs; Robert W. Steele, Roger C. Simmons, James R. Myers and W. James McKay of Steele, Simmons & Fornaciari, Washington, D.C., and William F. Jones of Jones & Mack, Annapolis, Md., and Edward J. Glusing, Jr. of Baltimore, Md., of counsel.

Walter L. Pepperman, II, William H. Sudell, Jr. and David A. Jenkins of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant First Nat. Bank of Wilmington.

E. Norman Veasey and Robert W. Whetzel of Richards, Layton & Finger, Wilmington, Del., for defendants Commercial Credit Corp. and Control Data Corp.; James R. Eyler, Jefferson V. Wright and J. Steven Lovejoy of Miles & Stockbridge, Baltimore, Md., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiffs Satellite Financial Planning Corp. ("Satellite Financial") and Satellite Earth Station Protection Co. ("Earth Station") commenced this action in the District of Maryland by filing a ten-count complaint against the First National Bank of Wilmington ("First National"), Commercial Credit Company and Control Data Corporation. The action, on defendants' motion, was transferred to this district.

The complaint alleges the following claims against all three defendants: Count 1, Bank Holding Company Act violation; Count 2, antitrust violations; Count 3, breach of contract; Count 4, breach of implied contract; Count 5 breach of fiduciary relationship; Count 6, tortious interference with business relationships; Count 7, fraud; Count 8, RICO violations; Count 9, trade defamation; and Count 10, violation of financial privacy.

This Court dismissed Counts 2, 5, 6, 7, 8, 9 and 10 against all three defendants in *Satellite Financial Planning v. First National Bank*, 633 F.Supp. 386 (D.Del. 1986).[1] Plaintiffs have filed a motion for reconsideration of the Court's dismissal of

---

1. Defendants have subsequently moved to dismiss Count One in light of the Supreme Court's recent decision in *Board of Governors of the Federal Reserve System v. Dimension Financial Corp.*, — U.S. —, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (interpreting the Bank Holding Company Act).

the antitrust and financial privacy counts,[2] which is the subject of this Opinion. The factual background for the case can be found in *Satellite Financial Planning*, 633 F.Supp. at 390–392.

The Court will affirm its dismissal of the financial privacy count. On the antitrust count, the Court will affirm its dismissal of the Section 1 Sherman Act claims, but will reinstate the Section 2 Sherman Act monopolization claims.

## I. ANTITRUST CLAIMS

### A. Price Fixing

The Court affirms its dismissal of plaintiffs' price fixing claims. Both the horizontal and vertical price fixing claims are based in plaintiffs' allegation that First National Bank coerced Earth Station to charge no more than $525 for the television reception only ("TVRO") satellite dish warranties.

■ As stated in the prior opinion, there can be no horizontal price fixing here because there are no competitors who have conspired to fix a product's price. *Satellite Financial Planning*, 633 F.Supp. at 395. The three defendants cannot be held to have conspired with each other because, as a parent company and its wholly owned subsidiaries, the three defendants are unable, as a matter of law, to conspire to violate Section 1 of the Sherman Act. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Satellite Financial*, 633 F.Supp. at 395.

■ There also cannot be a horizontal price fixing conspiracy between plaintiffs and defendants. Plaintiffs' claim that Satellite Financial and Earth Station should be viewed as one entity[3] does not alter the fact that defendants are not alleged to be in the market of selling TVRO warranties. Nor, for that matter, are plaintiffs alleged to be lending money directly to consumers for the purpose of buying TVRO's.[4] Plaintiffs cannot claim that the credit and the warranties are effectively one "product" when they allege that only 50% of those consumers who financed the dishes also purchased warranties. Complaint at ¶ 32(m). The limit on price of warranties allegedly imposed by defendants does not affect the cost of credit offered by plaintiffs because of the plain fact that plaintiffs are not selling credit. Thus, the Court rejects plaintiffs' claim that defendants alleged coercion of the warranty price effectively fixed the price of credit. The only manner in which plaintiffs and defendants allegedly competed is as loan brokers, finding borrowers to whom the First National Bank could lend money; in this business, there is no price capable of being fixed. Because plaintiffs and defendants are not selling the same product, there cannot be a horizontal price fixing agreement between them.

Plaintiffs' vertical price fixing fails because defendants are not alleged to be in the warranty business. Vertical price fixing claims arise in situations where the manufacturer controls the price at which the distributor resells the product. *See, e.g., Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *Albrecht v. The Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Dr. Miles Medical Co. v. John D. Park & Sons, Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed.2d 502 (1911). Plaintiffs do not allege that defendants sold them warranties which plaintiffs then resold to the public. Nor do plaintiffs allege that defendants loaned them money which plaintiffs then lent to consumers. There exists

---

**2.** Plaintiffs have also filed a motion to amend the complaint in order to revive the other dismissed counts.

**3.** Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Reconsideration at 7 ("Pl. Mem.").

**4.** Plaintiffs were selling two items. To the bank, Satellite Financial found consumers to borrow money and were paid for each loan application accepted. To the consumers of TVRO systems, Earth Station sold warranties. The plaintiffs do not allege that they lent money to the consumers.

no vertical chain of distribution to which vertical price fixing would apply.[5] Instead, Satellite Financial's relationship to First National is as a seller of potential loan recipients. What Satellite Financial receives is a commission on the loan of $250. Satellite Financial does not become part of the loan transaction. (Operating Agreement at ¶ 2(a)).[6]

### B. Exclusive Dealing

■ Plaintiffs also claim that the Court made impermissible findings of fact in holding that the right of first refusal contained in the Operating Agreement did not amount to an exclusive dealing arrangement. (Pl.Mem.13). This contention misreads the Court's approach. The Court evaluated the Operating Agreement on its face and the factual allegations of the Complaint to conclude that the right of first refusal was not equivalent to an exclusive dealing arrangement.

An exclusive dealing arrangement is one in which the seller will only deal with the buyer if the buyer agrees to purchase all its requirements from the seller. *See, e.g., Standard Oil Co. v. United States,* 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949).[7] The Operating Agreement contemplates two possibilities on its face which preclude it from being viewed as an exclusive dealing arrangement.[8] Most impor-

tantly, consumers can reject First National as a lender, and Satellite Financial is then free to find a second source of credit. Second, Satellite Financial is free to find another source of credit whenever First National rejects an application. Either scenario permits Satellite Financial to deal with other lenders.

■ On a motion to dismiss, a court cannot look beyond the Complaint or, in this case, beyond the Complaint and the express terms of an agreement attached to the Complaint. *Olpin v. National Insurance Company,* 419 F.2d 1250, 1255 (10th Cir. 1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970). Plaintiffs have alleged no facts in the Complaint at variance with the plain reading of the agreement.[9] Accordingly, the Court holds that the right of refusal does not establish an exclusive dealing arrangement.

### C. Monopolization

On reconsideration, the Court agrees with plaintiffs that the product market definition the Court undertook in the prior opinion was improper at this point in the proceedings. Plaintiffs claim that the credit market for TVRO's is distinct from the overall consumer credit market and that First National attempted to monopolize the TVRO credit market.

---

5. The Court agrees with plaintiffs that vertical price fixing, as opposed to non-price vertical restrictions, receives *per se* treatment. *Compare Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), *with Continental T.V., Inc. v. GTE Sylvania,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1968). Because there is no vertical restriction in the instant case; however, the distinction is beside the point.

6. The Operating Agreement between First National Bank and Satellite Financial was attached to and incorporated into the Complaint.

7. In *Standard Oil,* the Supreme Court applied Clayton Act § 3 to the case and did not reach the potential applicability of Sherman Act § 1. Because money is not a commodity, only Sherman Act § 1 could potentially apply to the instant case. *Satellite Financial Planning,* 633 F.Supp. at 399.

8. The Operating Agreement provides, in pertinent part:

> Until the termination hereof in accordance with the provisions of Section 8 below, Firm [Satellite Financial] shall not submit CAPS [Consumer Credit Applications] to secure financing for the retail purchase of satellite dish receiving systems to any person or company other than Bank [First National] provided, however, that Firm amy submit any CAPS to any person or company other than Bank (a) which has been rejected by Bank, or (b) if the prospective Borrower with respect to such CAP has rejected the financing terms offered by Bank.

Operating Agreement ¶ 1.

9. The "practicalities" of the credit market, as discussed in Plaintiffs' Brief, n. 13 are not alleged in the complaint, nor are there any factual allegations rendering the consumers' power to go elsewhere ineffective.

■ In monopolization cases, defining the market is generally a complicated, fact-based determination. *See, e.g., American Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230 (3d Cir.1975); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547 (1st Cir.1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). Presently, the Court has before it only plaintiffs' contention that the consumer credit market can be segmented and defendants' counter-argument that it cannot. On a motion to dismiss, the Court must accept the plaintiffs' well pleaded facts as true, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943 (3d Cir.1984), so that it must accept Satellite Financial's product market definition. This market definition, combined with plaintiffs' allegation concerning defendants' market power, creates a viable monopolization claim. Accordingly, the Sherman Act § 2 claims will be reinstituted and plaintiffs can attempt to prove their claimed market definition.

## II. FINANCIAL PRIVACY

■ The Court affirms its prior dismissal of plaintiffs' claim that defendants violated plaintiffs' common law right to financial privacy, count ten of the Complaint.

Plaintiffs' major contention is that the Court erred in holding that Satellite was not a "customer" of the bank. Yet neither the case law nor the statute cited by plaintiffs support their contention. Plaintiffs cite to *Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir.1978) for the proposition that the term "customer" should receive a broad interpretation, thus including a wide range of persons having dealings with banks. On examination of the facts of *Swerdloff*, the Court finds that the interpretation of customer in that case does not widen the scope of the term sufficiently to encompass an entity in Satellite Financial's position.

In *Swerdloff*, the court held the guarantors of a loan to be bank customers. The guarantors owned 100% of the stock of the closely held corporation to whom the bank lent money. Because of the guarantors' potential liability and their control of the direct borrower, the court did not need to widen the interpretation of the term customer to any great extent. By contrast, Satellite Financial is selling a service to the bank. As the Operating Agreement states, Satellite Financial was an independent contractor working for the bank. Operating Agreement ¶ 7. The holding in *Swerdloff* does not contemplate an expansion of the term customer to include an independent contractor like Satellite Financial.

Plaintiffs also cite to the definition of customer in the Right to Financial Privacy Act, 12 U.S.C. § 3401 (1980). As plaintiffs concede, this Act only protects individuals. Pl.Mem. 19. Moreover, the Act is concerned with the release by a bank of an individual's financial records to a governmental agency. This factual setting is a far cry from divulging a corporation's business information, the names of potential customers, to a potential competitor. Accordingly, the Court does not think that the Right to Financial Privacy Act's definition should be applied here.

Finally, the plaintiffs claim that the Court improperly looked to the implicit meaning of the contract in holding that the contract authorized disclosure by First National to Commercial Credit and Control Data. Pl.Mem.20. This contention is incorrect. On its face, ¶ 6 authorizes First National or its affiliates, which includes Commercial Credit and Control Data, to "solicit and sell credit life, credit disability and/or credit accident and health insurance to any borrower." In order for Commercial Credit and Control Data to be able to do this they must know information about the borrowers. This means that Satellite Financial authorized the release of the information. Whether or not the information was misused depends upon the interpretation of the contract.[10]

**10.** The Court also rejects plaintiffs' contention    that the Court has denied them the right to

454

## III. CONCLUSION

On reconsideration of this Court's prior dismissal of Counts Two and Ten, the Court affirms its dismissal without prejudice of Count Ten. The Court will affirm all aspects of its dismissal of Count Two except the dismissal of the monopolization claim. That aspect of the claim will be reinstated.

An Order will enter in conformity with this Opinion.

plead alternative theories of relief. The financial privacy claim is being dismissed because the facts as alleged do not state a cause of action for breach of financial privacy. That the facts as alleged state a contractual cause of action has no bearing on the Court's view that no financial privacy cause of action exists.