868 F.2d 206
 57 USLW 2506, 1989-1 Trade Cases 68,465
 Robert DAVIS, Virginia Davis, William Davis, Dynamic Genes,
Inc., A Delaware corporation, f/k/a Big D Seed Co., a
Delaware corporation, Davis Hybrid Corn Co., and Davis Seed
Farms, Plaintiffs-Appellants,
v.
FIRST NATIONAL BANK OF WESTVILLE, a national banking
association, and First National Bank of Danville,
a national banking association,
Defendants-Appellees.
 No. 88-1596.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 9, 1988.
Decided Jan. 26, 1989.
Rehearing and Rehearing En Banc Denied March 9, 1989.
 
 John H. Bisbee, Macomb, Ill., for plaintiffs-appellants.
 F. Daniel Welsch, Welsch & Hall, Danville, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.*
 BAUER, Chief Judge.
 
 
 1
 Plaintiff-appellants Robert, Virginia, and William Davis appeal from the district court's grant of summary judgment to defendant-appellees First National Bank of Westville and First National Bank of Danville on the Davises' claim that the Banks violated an anti-tying provision of the 1970 amendments to the Bank Holding Company Act ("BHCA"). We affirm.
 
 
 2
 The relevant facts are straightforward. The Davises maintained a relationship with the banks from 1977 until 1985, during which period the Davises borrowed substantial sums of money and, in return, executed a number of notes payable to the banks. In late 1984 or early 1985, the Davises realized that they needed an additional $200,000 to keep their business afloat. The banks would not lend the Davises additional funds, however, unless the Davises agreed to liquidate their business and pay off their existing debts to the banks. On June 28, 1985, the Davises signed a loan agreement with the banks, the twelfth paragraph of which required the Davises to enter into a contact to sell their business by September 1, 1985. When the Davises failed to sell their business by that deadline, the banks insisted that the Davises cease operations and start liquidating. In February, 1986, the Davises sold their business.
 
 
 3
 The Davises filed this action in December, 1986, charging that paragraph twelve of their June 1985 loan agreement with the banks violated an anti-tying provision of the 1970 amendments to the BHCA, 12 U.S.C. Sec. 1972(1)(C), because it required the Davises to provide the banks with a service not usually related to or provided in connection with a loan--the liquidation of their business. On February 18, 1988, the district court granted the banks' motion for summary judgment on the Davises' tying claim, holding that the requirement in paragraph twelve that the Davises liquidate their business was not an anticompetitive practice, and that the liquidation requirement was a traditional banking practice designed to protect the banks' investment with the Davises.
 
 
 4
 Adopted in 1970, Chapter 22 of the BHCA, codified at 12 U.S.C. Secs. 1971-1978, proscribes certain conditional transactions where their effect would be to increase the economic power of banks and to lessen competition. 1970 U.S.Code Cong. & Admin.News, pp. 5519, 5535. It was intended "only to 'prohibit anticompetitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire.' " McCoy v. Franklin Savings Ass'n, 636 F.2d 172, 175 (7th Cir.1980) (quoting Senate Banking and Currency Committee Report No. 91-1084, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Admin.News, pp. 5519, 5535) (emphasis added); Swerdloff v. Miami National Bank, 584 F.2d 54, 58 (5th Cir.1978); Duryea v. Third Northwestern National Bank, 606 F.2d 823, 825 (8th Cir.1979); Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 897 (3d Cir.1981). It "was not intended to interfere with the conduct of appropriate traditional banking practices." McCoy, 636 F.2d at 175 (emphasis added); Clark v. United Bank of Denver National Ass'n, 480 F.2d 235, 238 (10th Cir.1973); B.C. Recreational Industries v. The First National Bank of Boston, 639 F.2d 828, 831 (1st Cir.1981). Nor was it intended to prohibit attempts by banks to protect their investments. McCoy, 636 F.2d at 175; Tose, 648 F.2d at 897.
 
 
 5
 To that end, the BHCA's anti-tying provision, 12 U.S.C. Sec. 1972, states
 
 
 6
 (1) A bank shall not in any manner extend credit ... on the condition or requirement--
 
 
 7
 (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;
 
 
 8
 (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank or from any other subsidiary of such bank holding company;
 
 
 9
 (C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;
 
 
 10
 (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or
 
 
 11
 (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.
 
 
 12
 Thus, to achieve its purpose of checking the economic power of banks, section 1972 proscribes tying (subsections (1)(A) and (B)), reciprocity (subsections (1)(C) and (D)), and exclusive dealing (subsection (1)(E)) arrangements that traditionally have been targets of the antitrust laws because of their potentially anticompetitive effects. Bruce v. First Federal Savings and Loan Ass'n of Conroe, Inc., 837 F.2d 712, 715 (5th Cir.1988). A tie-in is "an arrangement by one party to sell one product (the 'tying product'), but only on the condition that the buyer also purchase a different ... product (the 'tied product'), or at least agree that he will not purchase that product from another supplier." Northern Pacific Railroad v. United States, 356 U.S. 1, 5-6, 78 S.Ct. 514, 518-19, 2 L.Ed.2d 545 (1958). A tie-in lessens competition when it enables an economically powerful seller of the tying product to coerce customers of that product into buying an additional product they do not want or would rather buy elsewhere. A reciprocity arrangement can take more than one form. It may be the harmless practice of buying from and selling to one's customers, or it may be coercive. An economically powerful bank, for example, may agree to loan money to a pen manufacturer only if the manufacturer agrees to sell pens to the bank and its affiliates at a discount. The antitrust laws are concerned with tie-ins and reciprocity agreements when they enable a party with sufficient power in one market to avoid the standard market criteria of price, quality, and service in another market and thereby lessen competition.
 
 
 13
 The purpose and effect of section 1972, then, "is to apply the general principles of the Sherman Antitrust Act prohibiting anticompetitive tying arrangements specifically to the field of commercial banking, without requiring plaintiffs to establish the economic power of a bank and specific anticompetitive effects of tying arrangements." Parsons Steel, Inc. v. First Alabama Bank of Montgomery, 679 F.2d 242, 245 (11th Cir.1982); see also Exchange National Bank of Chicago v. Daniels, 768 F.2d 140, 143 (7th Cir.1985) (noting that section 1972 is meant to preserve competition among rival businesses and that it is the banking equivalent of section 3 of the Clayton Act, 15 U.S.C. Sec. 14). For section 1972 renders tying arrangements involving a bank unlawful
 
 
 14
 without any showing of specific adverse effects on competition or other restraints of trade and without any showing of some degree of bank dominance or control over the tying product or service. Moreover, as individual tying arrangements may involve only relatively small amounts, the prohibitions of [section 1972] are applicable regardless of the amount of commerce involved.
 
 
 15
 Senate Report No. 91-1084, 91st Cong., 2d Sess., 1970 U.S.Code Cong. & Admin.News 5519, 5558 (supplementary views of Senator Brooke).
 
 
 16
 Nevertheless, even under this "relaxed" per se approach to banking tie-ins, a plaintiff seeking relief under section 1972 must still complain of a practice that is anticompetitive. Parsons, 679 F.2d at 245 ("Unless the 'unusual' banking practice is shown to be an anticompetitive tying arrangement which benefits the bank, it does not fall within the scope of the Act's prohibitions."); see also B.C. Recreational Industries, 639 F.2d at 832; Clark, 480 F.2d at 238; Duryea, 606 F.2d at 825; Tose, 648 F.2d at 897; but see Bruce, 837 F.2d at 718. If not, as the Eleventh Circuit has noted, section 1972 would prohibit banks "from devising particular methods for protecting themselves against default" and could, in various situations, "have the undesirable effect of discouraging banks from granting extensions of credit, and thus precipitate foreclosure or bankruptcy." Parsons, 679 F.2d at 245. Any such condemnation of banking practices that have no anticompetitive effect but are aimed at protecting the bank's investment would run directly contrary to section 1972's legislative purpose and would render coincidental the statute's concern with arrangements traditionally targeted by the antitrust laws.
 
 
 17
 The Davises, unfortunately, do not complain of an anticompetitive reciprocity arrangement. They allege that the banks violated section 1972(1)(C)--the provision dealing with reciprocity arrangements--by granting their request for credit only on the condition that the Davises provide a business liquidation "service" to the banks. The Davises do not allege that the defendant banks attempted to prevent the Davises from dealing with other banks. Nor can they possibly claim that the defendant banks were attempting to use their market power over credit to secure business liquidation services at better-than-market terms. Indeed, we find it difficult to characterize the banks' requirement that the Davises' liquidate their business in order to obtain the credit they sought as an "additional service" under section 1972(1)(C). The Davises seem to want to avoid calling a credit term a credit term; if so, they are not really alleging a reciprocity arrangement. Even if they are alleging such an arrangement, it is not anticompetitive and therefore not the concern of section 1972, which was enacted to prevent banks from using their economic power to lessen competition.
 
 
 18
 The former Fifth Circuit's decision in Swerdloff does not convince us otherwise.
 
 
 19
 In Swerdloff the bank allegedly required the owners of an indebted corporation to sell 51% of the company stock to a competitor, also a customer of the bank. The issue there was whether the fact that a bank required the sale of a business to a third party where no benefit to the bank was alleged, constituted a 'tying arrangement' under [the BHCA]. The court held that where a bank is alleged to have imposed a requirement that the business be sold as a condition for granting further credit, benefit to the bank may be assumed for purposes of a motion on the pleadings.
 
 
 20
 Parsons, 679 F.2d at 242 (emphasis added). In Parsons, then, the Eleventh Circuit, one of the successor courts to the Fifth Circuit, limited the holding of Swerdloff to motions to dismiss and made clear that, to establish a section 1972 violation, even an unusual banking practice must be shown to be an anticompetitive tying arrangement. Id. at 245-46. The Davises, of course, did not lose in the district court on a motion to dismiss but on a motion for summary judgment, and they have made clear in their arguments to this court that they do not claim that the banks used their economic power over credit to lessen competition. Swerdloff, therefore, cannot help the Davises.
 
 
 21
 Nor can another case upon which the Davises rely, Costner v. Blount National Bank of Maryville Tennessee, 578 F.2d 1192 (6th Cir.1978). In Costner, a fifty-percent owner of an automobile dealership obtained a personal loan from the defendant bank to purchase the remainder of the dealership's outstanding stock. The bank imposed several credit conditions in the parties' loan agreement, including requirements that the dealership sell a substantial share of its retail commercial paper to the bank and that the dealership employ a person designated by the bank to ensure compliance with the arrangement. The agreement so clearly violated section 1972's anti-tying provisions that the bank on appeal conceded such a violation and contended only that its illegal tying arrangement did not damage the plaintiff and that it did not sufficiently affect interstate commerce to constitute a violation of the Sherman Act.
 
 
 22
 In short, we conclude that the district court did not err in granting summary judgment to the banks on the Davises' section 1972 tying claim. Since the practice of which the Davises complain is in no way anticompetitive, it is outside the scope of the 1970 amendments to the BHCA.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation