**Laurie DOZIER, Jr., M.D.,**
**Plaintiff–Appellee,**

v.

**PROFESSIONAL FOUNDATION FOR HEALTH CARE, INC., Frank D. Tagliarini, M.D., Defendants–Appellants.**

No. 90–3328.

United States Court of Appeals,
Eleventh Circuit.

Oct. 11, 1991.

Patricia Guilday, Pensacola, Fla., for defendants-appellants.

John C. Cooper, Douglass, Cooper, Coppins & Powell, Tallahassee, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and PECK *, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Pursuant to a contract with the Health Care Financing Administration (HCFA), the Professional Foundation for Health Care, Inc. (the Foundation), a Medicare peer review organization (PRO), reviews Medicare claims filed in the state of Florida.[1] If the Foundation determines that the treatment given to a Medicare patient was unreasonable, not medically necessary, or did not meet professional standards of care, Medicare will not pay the claim, 42 U.S.C. § 1320c–3(a)(1) (1988); 42 C.F.R. § 466.-71(a) (1990), and the Foundation so notifies the patient, the doctor, and the hospital.[2] Dr. Laurie Dozier, Jr., a physician who treats Medicare patients, claims that the Foundation issued a notice of payment denial that contains a defamatory statement about him to one of his patients without first notifying him and giving him an opportunity to explain why denial was not appropriate—as, he asserted, 42 C.F.R. § 466.93 (1986) required. Accordingly, he brought this suit against the Foundation and its medical director, Dr. Frank Tagliarini, for damages, pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The case proceeded to trial before the magistrate judge, *see* 28 U.S.C. § 636(c)(1) (1988), and a jury awarded Dr. Dozier compensatory damages in the sum of $100,000 against Dr. Tagliarini and punitive damages in the sum of $10,000 against Dr. Tagliarini and $250,000 against the Foundation. Judgment was entered in accordance with the jury's verdict, and this appeal followed.

We reject Dr. Dozier's contention—on which his claim is based—that 42 C.F.R. § 466.93 (1986) required the Foundation to notify him of a denial of payment before telling his patient. Indeed, the governing statute in force when the Foundation issued this notice, 42 U.S.C. § 1320c–3 (1982),

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. Under the Medicare system, the federal government provides health insurance for elderly and disabled persons; the Health Care Finance Administration (HCFA), an agency of the Department of Health and Human Services, administers Medicare payments. Medicare Part A, 42 U.S.C. §§ 1395c to 1395i–4 (1988), pays for inpatient hospital care. Medicare Part B, *id.* §§ 1395j to 1395w–4 (1988), pays for other types of medical services, including physicians' services.

2. Medicare will not pay for services that are "not reasonable and necessary," *id.* § 1395y(a)(1)(A) (1988); hospitals and doctors providing Medicare services must assure that the services given to Medicare patients are "provided economically and only when, and to the extent, medically necessary," "of a quality which meets professionally recognized standards of health care," and "supported by evidence of medical necessity and quality," *id.* § 1320c–5(a)(1)–(3) (1988). To ensure that the quality of Medicare treatment meets these standards and that the government pays only for necessary and reasonable services, Congress directed the Secretary of HCFA to contract with PROs. *Id.* § 1395y(g) (1988). PROs are organizations of doctors (or organizations that employ doctors). *Id.* § 1320c–1(1)(A) (1988).

required the Foundation to notify them at the same time. We conclude that Dr. Dozier failed to state a claim for relief and therefore reverse the district court's judgment.[3]

## I.

On May 23, 1986, Dr. Dozier admitted a Medicare patient, Ina Holloway, to the Tallahassee Regional Medical Center, Inc. (the Hospital) for treatment related to coronary artery disease with angina pectoris and congestive heart failure with mild pulmonary edema. Holloway was discharged on May 27, 1986. Dr. Dozier readmitted her a day later for further treatment. On June 2, 1986, she was discharged for the second time. Either the Hospital, Dr. Dozier, or Holloway submitted a claim for Medicare reimbursement for the care given to Holloway during her second admission to the Hospital.[4] In accordance with its contract with the HCFA, the Foundation reviewed Holloway's medical records to determine whether Medicare would pay for her second admission to the hospital.

After review, the Foundation determined that Holloway's second admission to the Hospital was unnecessary. It did not, however, first notify Dr. Dozier that Medicare would not pay for this treatment and give him an opportunity to explain why payment was appropriate. Instead, it sent a notice of payment denial to Holloway; on this notice, it stated that Medicare would not pay for her second admission to the hospital because "it was not medically necessary for [Holloway] to have been admitted to the hospital. Quality of care given on previous admission was inadequate requiring second admission."[5] The Foundation sent copies of this "Retrospective Admission Denial" to Holloway, the hospital administrator, the Hospital billing office, the chairman of the Hospital's utilization review committee, and Dr. Dozier. Later, after the Hospital and Dr. Dozier protested the denial, the Foundation reversed its initial denial of payment.

Dr. Dozier alleged, in his complaint, that the notice sent to his patient—which, he asserts, the Foundation would never have sent had it given him an opportunity to contest the proposed payment denial—contained a defamatory statement that harmed his professional and personal reputation, thereby depriving him of a property and liberty interest without the due process of law guaranteed him by the Fifth Amendment.[6] The Foundation and Dr. Tagliarini, in their answer, denied liability. Prior to trial, they moved for judgment on the pleadings; they argued that the complaint failed to allege that they had deprived Dr. Dozier of a liberty or property interest protected by the Fifth Amendment. The

---

3. As stated in the text *infra* p. 816, the district court, in passing on the defendants' motion for judgment on the pleadings, should have concluded that the plaintiff failed to state a claim for relief and granted the motion. A motion for judgment on the pleadings "admits the plaintiff's factual allegations and impels the district court to reach a legal conclusion based on those facts." *Marx v. Gumbinner*, 855 F.2d 783, 789 n. 8 (11th Cir.1988) (dictum); *see also Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 57 (5th Cir. 1978). Therefore, the facts we recite are only those alleged in Dr. Dozier's complaint, and we assume that such facts are true.

4. The complaint and the parties' briefs are unclear on this point.

5. Holloway evidently was not financially liable for this denied payment; the notice sent to her read: "Since you were not informed that the care rendered to you may not be covered by the Medicare program, you *will not* be billed for services received [during this second admission to the Hospital]."

6. Dr. Dozier also, in his complaint, presented facts that tended to support a claim that the Foundation issued the payment denial at issue in retaliation for his exercise of his First Amendment rights: the Foundation sent the denial, he alleged, a short time after he, at a meeting of Tallahassee doctors and representatives of the Foundation, forcefully complained about the manner in which the Foundation was operating. Dr. Dozier did not, however, specifically present a First Amendment claim in his complaint. At trial, he argued that this First Amendment claim had been tried by consent; accordingly, he moved to amend the pleadings to conform to the evidence on this issue. The court denied this motion and refused to instruct the jury on the First Amendment claim. This ruling is not before us.

magistrate judge, with the parties' consent,[7] deferred ruling on this motion until after trial. At trial, the jury found for Dr. Dozier on his *Bivens* claim.[8]

Thereafter, the magistrate judge issued an order denying the defendants' motion for judgment on the pleadings. He held, first, that Florida law creates a property interest in professional reputation; under the Fifth Amendment, the federal government could not injure this property interest without providing due process. Second, he held that Dr. Dozier had a liberty interest in his professional reputation; the federal government likewise could not injure this interest without due process. For the reasons stated below, we hold that the magistrate judge erred.[9]

## II.

■ As we have stated, Dr. Dozier's claim is based on his assertion that federal law required the Foundation, before it notified his patient that it was denying payment, first to notify him and to give him an opportunity to contest the recommendation. 42 C.F.R. § 466.93 (1986), the regulation Dr. Dozier claims imposed this duty on the Foundation, states that PROs, before they issue an initial notice that Medicare payment has been denied, must

(a) Promptly notify the provider or supplier and the patient's attending physician (or other attending health care practitioner) of the proposed determination ...; and

(b) Afford an opportunity for the provider or supplier and the patient's attending physician (or other attending health care practitioner) to discuss the matter with the PRO physician advisor and to explain the nature of the patient's need for health care services....

After the PRO tells the hospital and doctor that it is considering denying payment and gives them an opportunity for discussion, the PRO, if it still feels that the treatment was unnecessary or did not meet professional standards, must send written notice that payment for the treatment is denied to the patient, the attending physician, the hospital (or other treatment facility) and to the entity that is responsible for administering and paying the patient's Medicare claim. 42 C.F.R. § 466.94 (1986).[10]

This regulation envisions that the doctor and hospital will receive an initial, informal notice before the formal written notice goes out. It does not, however, forbid the PRO from sending such an initial, informal notice to the patient, or from otherwise soliciting the patient's views on the possibility of payment denial. Indeed, as the purpose of the initial informal notice seems

---

7. The parties agreed that the case should be decided by the magistrate judge, with direct appeal to this court.

8. Dr. Dozier's complaint presented two additional claims. He alleged that the defendants were liable, under state tort law, for defaming him, and he asked the district court to certify a class of Florida doctors who treated Medicare patients and to enjoin the Foundation to give this class prior notice and an opportunity to contest proposed payment denials before it notified patients that claims were denied. Neither of these claims is before us on appeal; Dr. Dozier abandoned his proposed class action claim before trial, and the jury found for the defendants on the state-law defamation claim.

9. The defendants also appeal from the magistrate's denial of their motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. Because we hold that the magistrate should have granted the motion for judg-

ment on the pleadings, we do not consider these claims on appeal.

10. After the PRO sends this written notice of denial, the patient, doctor, or hospital may ask the PRO to reconsider its decision. 42 U.S.C. § 1320c–4 (1982); 42 C.F.R. §§ 473.10–.38 (1986). If the PRO, on reconsideration, still denies payment, and this decision is "adverse to the [patient]"—i.e., the patient is financially responsible for the denied claim—and the amount in controversy exceeds statutory requirements, then the patient may ask for a hearing before the Secretary and for judicial review of the decision; no such hearing and review is available to the doctor or hospital. *See* 42 U.S.C. § 1320c–4 (1982); 42 C.F.R. § 473.40 (1986). If the PRO determines that a hospital or doctor has given care that is a gross and flagrant violation of the standards, or has given unnecessary or poor quality care in a substantial number of cases, it informs the Office of the Inspector General; this initiates a process that may lead to a determination that the hospital or doctor may no longer receive Medicare payments.

to be to allow the PRO to gather information on the circumstances of the treatment given—and, thus, to filter out erroneous denials—before it issues a formal denial, the patient's input may be crucial. In most circumstances, the hospital or physician, rather than the patient, will be liable for the cost of the denied treatment. Consequently, the patient's impartial input may be more important to the PRO's determination than the doctor's or hospital's. Indeed, it may be necessary for the PRO, in order accurately to filter out erroneous denials, to involve the patient in this initial stage of the process.

■ Even though this regulation does not forbid notice to the patient, Dr. Dozier could argue that in this case the defendants deprived him of a liberty or property interest by sending the defamatory statement to his patient without whatever process the Fifth Amendment required. We hold, however, that the plain language of 42 U.S.C. § 1320c–3(a)(3) (1982), the statute under which 42 C.F.R. § 466.93 (1986) was promulgated, precludes this argument. The version of section 1320c–3(a)(3) in force when the Foundation sent the denial notice at issue stated:

> Whenever the [PRO] makes a determination that any health care services or items furnished or to be furnished to a patient by any practitioner or provider are disapproved, the organization shall promptly notify such practitioner or provider, such patient, and the agency or

organization responsible for the payment of claims.... In the case of practitioners and providers of services, the organization shall provide an opportunity for discussion and review of the determination.[11]

This statute *required* that whenever the PRO determined that Medicare payment should be disapproved, it had to notify promptly both the doctor and the patient. Dr. Dozier chose to participate in a federal program that required the Foundation to send denial notices to his patients at the same time they went to him. Under such a system, it is inevitable that patients will receive statements criticizing the quality of care they received. Dr. Dozier may not now complain that, because the Foundation followed federal law and sent such a notice, it somehow deprived him of due process.[12]

### III.

Accordingly, we REVERSE the order denying the defendants' motion for judgment on the pleadings and direct the district court to enter judgment for the defendants.

REVERSED.

**11.** In 1987, after the notice issued in this case, Congress amended this section to require that the PRO not inform the patient of the payment denial until 20 days after it notifies the hospital and doctor. *See* Pub.L. No. 100–203, § 4093(a). The legislative history of this amendment, recognizing that "[c]urrent law already requires that PROs provide practitioners and providers an opportunity for discussion and review of adverse determinations," stated that the change was intended to "establish an appropriate time frame for these discussions to take place." H.R.Rep. No. 391, 100th Cong., 1st Sess., pt. 1, at 426 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–246.

The current version of the initial notice provision specifies that when a PRO intends to deny payment under section 1320c–3(a)(1)(A) (unreasonable or unnecessary service) or section 1320c–3(a)(1)(C) (unnecessary inpatient care), the PRO may not notify the patient of the payment denial until 20 days after it has notified the hospital and doctor and given them an opportunity to discuss the denial with it. 42 U.S.C. § 1320c–3(a)(3)(B) (1988). When the PRO intends to deny payment under section 1320c–3(a)(1)(B) (unprofessional care), the PRO may not notify the patient until after it has notified the doctor or hospital and, if the doctor or hospital so requests, formally has reconsidered the decision. *Id.* § 1320c–3(a)(3)(D).

**12.** As we explain in the text *supra* p. 816, 42 C.F.R. § 466.93 (1986) created no right in the plaintiff; rather, the regulation merely directed the PROs, which had the duty to evaluate medical claims, on a procedure to follow in making their evaluations. We fail to see how a PRO's failure to carry out this directive could give rise to a due process claim.