Willis M. DURYEA, Jr., Appellant,

v.

The THIRD NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, a national banking association; Bruce Winslow, John Doe and Mary Roe, Appellees.

No. 78–1740.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 20, 1979.

Decided Oct. 9, 1979.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from the findings and judgment of the district court[1] in favor of the defendant-counterclaimant bank in the amount of its loan, plus attorney fees and costs, against plaintiff-appellant. The two primary issues on appeal are whether defendant bank violated the Bank Holding Company Act of 1970 in making the loans to plaintiff, and whether the trial court's award of attorney fees and costs was proper. We affirm.

Originally defendant-appellee herein, Third Northwestern National Bank of Minneapolis (Bank), brought suit in the Minnesota state courts to collect a $30,000 obligation evidenced by promissory notes signed by Willis M. Duryea, Jr., plaintiff-appellant herein. Thereafter Duryea commenced this federal court action against the Bank, claiming the loans in question violated the Bank Holding Company Act Amendments of 1970, 12 U.S.C. § 1971, et seq.; the Sherman Act, 15 U.S.C. § 1; Minnesota antitrust law, Minn.Stat.Ann. § 325.8013 (Supp.1979); Minnesota common law fraud and unjust enrichment; violation of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa; the Securities Exchange Act of 1934, 15 U.S.C §§ 78a–78hh; and Minnesota Blue Sky Law, Minn.Stat.Ann. Ch. 80 (1968) (current version Minn.Stat.Ann. Ch. 80A (Supp. 1979)). Duryea also named as defendants the Bank's past president, Bruce C. Winslow (Winslow), Robert L. Krause (Krause), Krause Investment Corporation (KIC), and Variable Investment Corporation (VIC). Appellee Bank counterclaimed on its loan for $30,000 plus interest and costs of collection, including attorney fees.[2]

The magistrate found for the Bank on its counterclaim and against Duryea on all of his claims, and awarded the Bank full recovery of the loan ($30,000), a stipulated amount of interest, and $22,097.21 as costs of collection, which included attorney fees.

The record discloses that appellant Duryea was approached by Krause,[3] a long-standing friend, accountant and financial adviser of his, concerning a condominium development in Desert Hot Springs, California, in which Krause was involved. Krause proposed to Duryea that Duryea borrow money from the Bank, where Winslow, a friend of Krause, was president; then the money that Duryea had borrowed from the Bank would be invested in the condominium project of Krause. Krause's corporation, KIC, would pay the cost of the loan and all interest involved. The reason for this roundabout method of obtaining funds was that the Bank at that time did not want to extend credit directly to the project. Krause, Winslow and Duryea were all aware of what was being done with the money.

Duryea never met or talked with any official of the Bank. Krause prepared and furnished the Bank with Duryea's financial statement. Krause prepared the note and secured Duryea's signature on the note. It was Duryea's belief that he was entering into negotiations with the Bank to borrow money for the purpose of helping Krause finance development of the project which KIC was constructing. When Duryea signed the note, it was his intention to lend the proceeds to Krause for use on the project.

In connection with the loan, Duryea intended, at some unspecified future date, to

1. Pursuant to stipulation of the parties the district court ordered that trial of this cause be before the United States Magistrate "and that any appeal be directly to the Court of Appeals for the Eighth Circuit from the judgment entered by this court consistent with and pursuant to the Findings of Fact, Conclusions of Law, and Recommended Order for Judgment of the Magistrate, and without appeal to the undersigned." We "[r]emanded to the district court for consideration of the conclusions of law made by the United States Magistrate and

certification of the results to this court." *Duryea v. Third Northwestern National Bank of Minneapolis,* 602 F.2d 809 at 810 (8th Cir. 1979) (footnote omitted). The latter has now been received and considered.

2. Krause, KIC and VIC were dismissed at the commencement of the trial.

3. Duryea had been Krause's personal physician for several years.

purchase one of the condominiums from KIC. Although not reduced to writing, it was understood that Duryea would receive some preference and consideration from KIC when it came time to offer the condominiums for sale.

Initially, on November 18, 1971, $20,000 was loaned by the Bank to Duryea, and the money order was taken by Krause to Duryea, who endorsed it over to KIC. At the same time, Krause gave Duryea a note from KIC for $20,000. The notes were due in 90 days and renewed every 90 days thereafter. Approximately a year later an additional $10,000 was borrowed from the Bank by Duryea after discussions with Krause. The money was furnished to KIC and subsequently the note from Duryea to the Bank and the note from KIC to Duryea were increased to $30,000 to reflect the increased loan. As before, Krause handled all note renewals and paid all interest on Duryea's notes to the Bank. Eventually, KIC went into bankruptcy, the note to Duryea became worthless, and the Bank demanded payment from Duryea on his $30,-000 note plus interest and costs including attorney fees.

Duryea limits his appeal to the court's finding that there was no violation of the Bank Holding Company Act (BHCA) by the Bank and the amount of attorney fees awarded the Bank.

The BHCA, 12 U.S.C. § 1972 (Supp.1978), provides in pertinent part:

> A bank shall not in any manner extend credit * * * on the condition or requirement—
>
> (3) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan * * *.

The intent of the BHCA Amendments of 1970, which include the above, is "to provide specific statutory assurance that the use of the economic power of a bank will not lead to a lessening of competition or unfair competitive practices." The purpose is to "prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." 1970 U.S.Code Cong. & Admin. News, pp. 5519, 5535. The amendments prohibit certain types of tying arrangements within the banking industry but are not intended to interfere with the conduct of appropriate traditional banking practices. *Clark v. United Bank of Denver Nat'l Ass'n,* 480 F.2d 235, 238 (10th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973). The intent and purpose of the amendments are very similar to those of the antitrust laws in that both seek to guard against unfair competition. *Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54 (5th Cir. 1978).

The trial court found with reference to the alleged violation of the BHCA Amendments that "Duryea was not coerced, required, or encouraged by the Bank to loan money to Krause or KIC;" further that "Duryea provided no service to the Bank in connection with its loans to him," and concluded, "[t]he Bank has not violated the Bank Holding Company Act of 1970 (12 U.S.C. § 1972)."

█ Duryea contends that the court's findings are clearly erroneous and therefore its conclusion that there was no violation of the BHCA was in error. We disagree.

Initially we note that the record discloses that Duryea was never in the Bank and never met the Bank officials. The most that can be said is that during a discussion between Winslow (Bank president) and Krause, Winslow told Krause that Winslow would be willing to loan money to Krause's credit-worthy Minnesota friends if they wanted to help. Thereafter, Krause asked Dr. Duryea if he wanted to participate, and Duryea willingly agreed. The court found and the record discloses that as early as 1970 Duryea and his wife visited the project at the request of Krause, and were impressed with it, and expressed interest in purchasing a condominium in the project at some future time. However, no agreement was made then or at any subsequent time

with respect to any future sale of a condominium unit.

Thereafter, in November 1971, Krause, acting in Duryea's behalf, secured the loan papers which Duryea executed. The notes contained no unusual restrictions or conditions. Likewise the Bank's money orders issued to Duryea were without restriction. They were delivered by Duryea's friend, Krause. No one from the Bank was present when Duryea received the money orders and endorsed them to KIC. Duryea simply reloaned the money to KIC and in exchange received KIC's note in the same amount personally guaranteed by Krause. At that time KIC was a solvent corporation engaged in several real estate development projects in Minnesota. Duryea renewed the note every 90 days for approximately a year and then loaned the additional $10,000 to KIC on November 13, 1972. KIC was not one of the Bank's customers during this period. The trial court was fully justified in finding that Duryea was not coerced, required or encouraged by the Bank to loan money to Krause or KIC.

The Bank did not participate in the management of, or control, or direct the development of the project. It imposed no condition or requirement upon Duryea. Duryea re-lent the money to KIC, not because the Bank demanded it, but because Duryea wanted to participate in the transaction. Krause was Duryea's friend, accountant and financial adviser. Furthermore, Duryea was interested in obtaining a condominium in the project at some time in the future. Duryea performed no service to the Bank in connection with its loans to Krause. We are satisfied the district court correctly concluded that the Bank had not violated the Bank Holding Company Act of 1970.

■ Appellant further claims the court erred in awarding attorney fees and costs to the Bank in the sum of $22,097.21, because it included legal services rendered the Bank in defending Duryea's claims of illegal banking practices.[4] Appellant contends attorney fees should have been limited to those directly incurred in collecting the note, i. e., the cost of prosecuting the counterclaim.

The district court in approving the award of attorney fees stated:

If the Bank had instituted suit to collect the note and plaintiff had, by way of counterclaim, served the complaint that is the basis of this action, all costs of both bringing suit and defending against the counterclaim would be "costs of collection" of the note. *See Taylor v. Continental Supply Co.,* 16 F.2d 578 (8th Cir. 1926). This court sees little difference where plaintiff brings suit to *prevent* collection of the note. Because it is necessary for the Bank to defend against such an action in order to collect on the note, attorney's fees incurred in defending against plaintiff's suit are a "cost of collection" as that term is used in the note. A contrary result would permit the maker of a note—by winning the "race to the courthouse"—to coerce settlement. This would render the "cost of collection" provision of little value, apparently contrary to what the parties to the note intended.

We agree with the district court. For additional authority supporting the proposition that when note provisions allow a creditor to charge a debtor for the costs of collection, including attorney fees, such fees may include all costs attributable to collecting the debt. *See Vandeputte v. Soderholm,* 298 Minn. 505, 216 N.W.2d 144 (1974), and in other jurisdictions, *Michael-Regan Co. v. Lindell,* 527 F.2d 653 (9th Cir. 1975).

Affirmed.

---

4. The attorney fees are not otherwise claimed to be excessive.