JST PROPERTIES, a Minnesota partnership, James C. Theros, Spero C. Theros, Plaintiffs,

v.

FIRST NATIONAL BANK OF GLENCOE, Defendant,

v.

LARKIN, HOFFMAN, DALY & LINDGREN, LTD., and Thomas P. Stoltman, Third–Party Defendants.

Civ. No. 4–87–1066.

United States District Court, D. Minnesota, Fourth Division.

Dec. 21, 1988.

Robert E. Boyle, Robert J. Hennessey, Amy D. Grady, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Minn., for plaintiffs.

John Troyer, Susan Thomas, Briggs & Morgan, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion for summary judgment and on plaintiffs' motion to strike certain affirmative defenses or in the alternative to prevent introduction by defendant of a Larkin, Hoffman opinion letter as a defense to liability. Defendant's motion for summary judgment will be denied, plaintiffs' motion to strike will be denied, and plaintiffs' motion in limine to prevent introduction of the opinion letter will be granted.

FACTS [1]

Plaintiff JST Properties (JST) is a Minnesota partnership and the current fee owner of property located at 723 Eleventh Street East in Glencoe, Minnesota (hereinafter Glencoe property). Plaintiffs James C. Theros and Spero C. Theros are Minnesota residents and partners in JST. Defendant First National Bank of Glencoe (Bank) is a banking institution organized under the laws of the United States with its principal place of business in Glencoe, Minnesota. Third-party defendant Larkin, Hoffman, Daly & Lindgren, Ltd. (Larkin, Hoffman) is a Minnesota professional partnership engaged in the practice of law. Third-party defendant Thomas P. Stoltman is a Larkin, Hoffman attorney and shareholder.

In early 1984 plaintiff James Theros was leasing property located at Lyndale Avenue and Franklin Avenue in Minneapolis (the Minneapolis property) where the Rudolph's Bar–B–Que restaurant is located. Affidavit of James Theros at par. 2–3. The lease was soon to expire and James Theros sought to exercise an option he had to purchase the property. Theros asked Lewis Mirviss and Arthur Nelson to assist him in obtaining financing for the purchase of the Minneapolis property.[2] Id. at par. 3.

Nelson and Mirviss made numerous contacts in an attempt to secure financing for James Theros' purchase of the Minneapolis property. Affidavit of Arthur Nelson at par. 3. Nelson and Mirviss contacted lending institutions, savings and loan institutions, and mortgage brokers, all without success. Id. Nelson and Mirviss learned that financing for a restaurant was not readily available in 1984. Id.

In a further attempt to obtain suitable financing, Nelson contacted Francis Condon, a real estate agent from Watertown, Minnesota. Condon had previously assisted Nelson in obtaining a mortgage for Nelson's home through another Glencoe bank, Security State Bank of Glencoe. Plaintiffs allege that Condon, acting on behalf of defendant First National Bank of Glencoe, proposed to plaintiffs that the Bank provide financing for the purchase of the Minneapolis property. Plaintiffs allege, however, that the availability of that financing was conditioned on plaintiffs purchasing from the Bank the Glencoe property which the bank had acquired through a real estate mortgage foreclosure in 1983. Plaintiffs allege that the Bank refused to finance purchase of the Minneapolis property unless plaintiffs agreed to purchase the Glencoe property and to combine the properties under one mortgage.[3] The Bank allegedly represented that the Glencoe property, which consisted of several small tenant spaces and a restaurant space, was a "viable" income-producing property. Complaint par. 5.

In June 1984 the parties entered into a purchase agreement and loan agreement. Under the terms of the agreements, the

1. This section substantially incorporates the statement of facts contained in the Court's May 27, 1988 order.

2. It was originally contemplated that Mirviss and Nelson would be part of a small group of partners investing in the Minneapolis property. Affidavit of Arthur Nelson par. 2. Ultimately, neither Mirviss nor Nelson participated as an investor in the purchase of the Minneapolis property. Nelson Aff. par. 10; Affidavit of Lewis Mirviss par. 15.

3. The bank disputes this characterization of the circumstances surrounding its offer of credit. The bank claims that Nelson proposed the structure of the transaction and further contends that plaintiffs never asked the bank to finance only the purchase of the Minneapolis property. The bank asserts that it never refused to finance only the purchase of the Minneapolis property without simultaneous purchase of the Glencoe property.

Bank would extend $550,000 to the Theroses who would in turn purchase the Glencoe property for $250,000; the Bank would retain interests in both properties as security for the loan.

On July 25, 1984 the Theroses requested that Thomas Stoltman, a Larkin, Hoffman attorney, provide them legal representation in their transaction with the Bank. Affidavit of Thomas Stoltman par. 2. Stoltman's role was to prepare for closing (which involved creating the JST partnership), to review both the proposed loan documents and abstract of title, to prepare a title opinion, and to negotiate with the Bank's president, attorneys and title insurance company. Stoltman Aff. par. 3; Second Affidavit of Calvin A. Johnson par. 4.

The parties closed the transaction on October 3, 1984. JST Properties, a partnership comprised of Spero Theros and James Theros, was formed to purchase the Glencoe property. James Theros separately purchased the Minneapolis property. The Bank advanced $550,000 to the plaintiffs in exchange for a promissory note. The note was secured by a mortgage on the Minneapolis and Glencoe properties, by assignments of lease and rents on both properties, and by the Theroses' personal guaranties. Under the terms of the note and mortgage deed, monthly mortgage payments to the Bank in the amount of $6,250 are due on the first day of each month. Prior to the closing the Bank's president requested that Stoltman provide the Bank with a legal opinion on the proposed transaction. Accordingly, Stoltman on behalf of Larkin, Hoffman provided the Bank with an opinion letter which stated in relevant part that:

The execution, delivery and performance by [plaintiffs] of the Note, Mortgage, Assignments and Financing Statements have all been duly executed and delivered by [the plaintiffs] and the Guaranties have been duly executed by [the Theroses] and all of the same constitute legal and binding obligations of, and are valid and enforceable against [plaintiffs] and the Guarantors, as the case may be, in accordance with the terms thereof, subject to bankruptcy and insolvency laws and the rights of creditors generally.

Exhibit B to Stoltman Aff. at 2 (hereinafter Opinion Letter).

Plaintiffs allege that they have experienced constant problems ever since they purchased the Glencoe property in October 1984. Complaint par. 9. The major restaurant tenant has been consistently delinquent in his payments of rent, utilities and other charges due under the lease. Other tenants have vacated their spaces in the building. Plaintiffs allege on information and belief that the value of the Glencoe property is less than or equal to $150,000. Plaintiffs paid the Bank $250,000 for the property.

On December 16, 1987 plaintiffs commenced this action against the bank alleging fraud and misrepresentation in the sale of the property (first cause of action), negligence (second cause of action), and duress (third cause of action). The complaint also alleged that by conditioning the loan on the purchase of the Glencoe property, the Bank had violated 12 U.S.C. § 1971, et seq. (antitying statute).[4] See Complaint, Fourth Cause of Action. The plaintiffs seek damages (treble damages for the violation of the anti-tying statute) or in the alternative a rescission of the transaction between the parties.

The Bank filed an answer denying the allegations of plaintiff's complaint and counterclaimed seeking to foreclose on the mortgage on the grounds that the plaintiffs were in default in the amount of $529,546.23 (representing the accelerated principal amount of the loan) together with accrued interest under the terms of the Note, Mortgage, and Guaranty Agreements. See Counterclaim par. 4. The Bank also filed a

4. 12 U.S.C. § 1972(1) provides in relevant part:
(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service[.]

third-party complaint for indemnification against Larkin, Hoffman and against Stoltman individually on the grounds that the legal opinion was negligently prepared. The Bank alleged that the opinion included a warranty that the entire loan transaction did not violate either federal or state law. The Bank accordingly claimed that if it were liable to the plaintiffs under 12 U.S.C. § 1971 then it was entitled to indemnification or reimbursement from the third-party defendants for their negligence, breach of contract and misrepresentation.

On April 20, 1988, plaintiffs moved the Court for summary judgment on the Bank's counterclaim and third-party defendants moved for dismissal or in the alternative for summary judgment on the Bank's third-party complaint. By order dated May 27, 1988, the Court granted both motions. The Court held that the Bank is not entitled to pursue its counterclaim for foreclosure because it failed to comply with notice requirements contained in the note executed by the parties. The Court further held as a matter of law that third-party defendants Larkin, Hoffman and Stoltman cannot be held liable in regard to the opinion letter for negligence or misrepresentation on the Bank's third-party complaint because the third-party defendants owed no duty to the Bank to investigate the entire transaction to determine if it complied with all relevant federal and state laws. The Court alternatively held that even if the third-party defendants were under a duty to warn the Bank of all possible defenses to the transaction, failure to note the potential applicability of the tying statute in the opinion letter would not constitute a breach of that duty since that statute is not a defense but rather provides an independent cause of action for treble damages.

The Bank now moves the Court for summary judgment on plaintiffs' fourth cause of action in which plaintiffs allege the Bank violated the anti-tying provision of the Bank Holding Company Act (BHCA), 12 U.S.C. § 1972(1)(A).[5] The Bank contends that plaintiffs have failed to establish the essential elements of a prohibited tying

arrangement. In particular, the Bank argues that plaintiffs have failed to plead and cannot prove that the alleged tying arrangement was anti-competitive. In addition, the Bank asks that if plaintiffs' federal cause of action under 12 U.S.C. § 1972 is dismissed, the Court dismiss plaintiffs' state claims for lack of subject matter jurisdiction.

Plaintiffs oppose the Bank's motion. Plaintiffs argue that no showing of anti-competitive affect is required to recover under the anti-tying provisions of the BHCA. Plaintiffs further argue that, as to the other elements required to show an unlawful tying, genuine issues of material fact exist precluding summary judgment.

Plaintiffs also move the Court to strike the Bank's affirmative defenses of estoppel and waiver or in the alternative to prevent the Bank from raising the Larkin, Hoffman opinion letter as a defense to plaintiff's claims. Plaintiffs argue that because the Court in its May 27, 1988 order determined that Larkin, Hoffman did not owe a duty to the Bank based on the opinion letter, it is inappropriate to allow the Bank to pursue defenses based on that opinion letter. The Bank opposes plaintiffs' motion.

DISCUSSION

I. *Defendant's Motion for Summary Judgment*

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). In making this determination,

---

**5.** This claim represents the basis for the Court's exercise of subject matter jurisdiction, which plaintiffs invoke pursuant to 28 U.S.C. § 1331

and the principles of pendent jurisdiction. No diversity exists among the parties.

the Court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences that can be drawn from the facts. *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### A. Existence of Tying Arrangement

■ In their fourth cause of action, plaintiffs allege that the Bank violated the anti-tying provisions of the BHCA, 12 U.S. C. § 1972(1)(A), by conditioning its extension of credit to plaintiffs on plaintiffs' purchase of the Glencoe property. Complaint par. 25.[6] Plaintiffs claim that as a result of this alleged unlawful tying of credit to the purchase of the Glencoe property, plaintiffs sustained damages in excess of $200,000 which should be trebled pursuant to 12 U.S.C. § 1975.[7] As part of its motion for summary judgment, the Bank argues that plaintiffs cannot establish the existence of a tying arrangement. The Bank contends that it did not condition its extension of credit on the purchase by plaintiffs of the Glencoe property. On the contrary, the Bank contends that plaintiffs proposed the structure of the transaction. *See* Affidavit of Calvin A. Johnson at par. 4, 7. The Bank asserts that plaintiffs did not request, nor did the Bank refuse, financing only for the purchase of the Minneapolis property. *Id.* at par. 7.

Title 12 U.S.C. § 1972(1)(A) provides:

(1) *A bank shall not in any manner extend credit,* lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, *on the condition or requirement—*

(A) *that the customer shall obtain some additional* credit, *property,* or service *from such bank* other than a loan, discount, deposit, or trust service[.]

(Emphasis added.) Plaintiffs allege that the Bank conditioned its extension of credit to plaintiffs on plaintiffs' purchase of the Glencoe property. Plaintiffs contend that they sought only financing for the Minneapolis property, and assert that the Bank required the conditional credit arrangement. Clearly, plaintiffs' allegations fall within the literal language of section 1972(1)(A) which prohibits a bank from requiring a customer to obtain additional property from the bank as a condition for a loan. Accordingly, the Bank is entitled to summary judgment only if plaintiffs have failed to set forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial regarding the existence of a tying arrangement. *See Lomar Wholesale Grocery,* 824 F.2d at 588.

The Court finds that plaintiffs have submitted ample specific evidence to avoid summary judgment. The affidavits of Spero and James Theros plainly state that they had no desire to purchase property in Glen-

---

**6.** A tie-in arrangement has been defined as "an agreement ... to sell one product [the tying product] but only on the condition that the buyer also purchases a different ... product [the tied product], or at least agrees that he will not purchase the product from any other supplier." *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

**7.** Title 12 U.S.C. § 1975 provides:

Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without regard to the amount in controversy, and shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee.

coe, and that the Theroses did so only because the Bank specifically required the purchase as a condition to plaintiffs' obtaining financing for the purchase of the Minneapolis property. Affidavit of Spero Theros at par. 4, 7; Affidavit of James Theros at par. 5–7. Further, the affidavit of Arthur Nelson, a friend of the Theroses who participated in negotiating the financing transaction, states that the Bank's agent Francis Condon told Nelson that in order for plaintiffs to obtain financing from the Bank for the Minneapolis property, plaintiffs would be required to purchase the Glencoe property. Affidavit of Arthur Nelson at par. 7. This affidavit testimony supports plaintiffs' claim and precludes the Court from finding as a matter of law that an unlawful tying arrangement did not exist.

B. "Anti–Competitive" Tying Arrangements

In support of its motion for summary judgment, the Bank argues that plaintiffs cannot recover under 12 U.S.C. § 1972(1)(A) because plaintiffs have failed to plead or prove that the alleged tying arrangement had an anti-competitive effect. Analogizing to general antitrust statutes,[8] the Bank contends that section 1972(1)(A) prohibits only tying arrangements that adversely affect competition. The Bank argues that absent an allegation and proof of anti-competitive effect, plaintiff may not pursue a claim under section 1972(1)(A).

The Bank cites a portion of the legislative history surrounding the enactment of 12 U.S.C. § 1972 as support for its argument that only anti-competitive tying arrangements are prohibited. The Bank notes that the senate report discussing section 1972 states that section 1972 "is intended to provide specific statutory assurance that the use of the economic power of a bank will not lead to a lessening of competition or unfair competitive practices."

S.Rep. No. 1084, 91st Cong. 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 5519, 5535. The senate report further provides:

The purpose of this provision is to prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire.

*Id.* The Bank argues based on these general statements that Congress intended section 1972 to prohibit only anti-competitive tying arrangements.

Analysis of the entire legislative history surrounding section 1972, including the specific supplementary views of several senators, reveals that the Bank's construction of section 1972 is not consonant with the intent of Congress. In the joint supplemental views of Senators Bennett, Tower, Percy and Packwood, the senators observe that the bill as proposed (which mirrors the final language of section 1972) proscribes all tying arrangements regardless of anti-competitive effect.

The bill language prohibits all tying arrangements involving any bank without any reference to possible adverse effects on competition or other restraints of trade and without any reference to bank dominance....

S.Rep. No. 1084, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 5519, 5547. In arguing against such a broad anti-tying provision, these senators state that the bill "would make certain bank practices, which exist for completely legitimate reasons and which increase competition among banks, *per se* violations of antitrust law *whether there is any anticompetitive effect or not.*" *Id.* at 5546 (emphasis added). The senators argued in favor of amending the bill so that it would prohibit only those tying arrangements whose effect may be

---

**8.** In order to establish an unlawful tying under the Sherman Act, 15 U.S.C. § 1, a plaintiff must prove that the party imposing the tying arrangement had sufficient economic power with respect to the tying product so as to appreciably restrain free competition in the market for the tied product. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 499, 89 S.Ct. 1252, 1256, 22 L.Ed.2d 495 (1969); *see also Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).

to lessen competition. *Id.* The language of section 1972 reveals that no such amendment was enacted. *See* 12 U.S.C. § 1972(1)(A).

The supplemental views of Senator Brooke further undermine the Bank's argument that only anti-competitive tying arrangements are prohibited by section 1972. Senator Brooke states:

> The committee has concluded, as the Supreme Court has recognized, that "tying arrangements serve hardly any purpose beyond the suppression of competition." (*Standard Oil Co. v. United States*, 69 S.Ct. 1051, 337 U.S. 293, 305–6, 93 L.Ed. 1371 (1949).) Because of their inherent anticompetitive effects, which may operate to the detriment of bank customers as well as banking and nonbanking competitors, *tying arrangements involving a bank are made unlawful by this section without any showing of specific adverse effects on competition or other restraints of trade and without any showing of some degree of bank dominance or control over the tying product or service.* Moreover, as individual tying arrangements may involve only relatively small amounts, the prohibitions of this section are applicable regardless of the amount of commerce involved.

S.Rep. No. 1084, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin. News 5519, 5558 (Supplementary views of Edward W. Brooke) (emphasis added). As Senator Brooke's comments illustrate, Congress recognized that the economic power of banks was such that even small banks could misuse their economic power to the detriment of bank customers. *See id.* at 5535. Thus Congress established a *per se* bar to tying arrangements involving banks.

The contrast between general antitrust statutes which require proof of anti-competitive effects and the *per se* prohibition against tying contained in the BHCA is highlighted in an article in the Banking Law Journal by the former assistant counsel to the Senate Banking Committee Timothy Naegele. Naegele writes:

> In enacting the anti-tying provision of the BHCA, Congress recognized that tying arrangements in the banking industry generally involve such small dollar amounts that they do not justify expensive and time-consuming antitrust litigation. Congress also recognized the difficulties in establishing an antitrust violation, since it is doubtful whether a bank customer subject to a bank tie-in could adduce sufficient evidence of the bank's market power and the effect on interstate commerce to recover under the Sherman Act. Thus, even if evidence of market power and the effect on interstate commerce are insufficient to state a cause of action under the Sherman Act, a litigant can still recover under Section 1972 of the Bank Holding Company Act.

Naegele, *The Anti–Tying Provision: Its Potential is Still There*, 100 Banking Law Journal 138, 143 (1983) (footnotes omitted).

The conclusion to be drawn from the analysis of legislative history set forth above—that plaintiff need not prove anti-competitive effect in order to recover under the anti-tying provisions of the BHCA, codified at 12 U.S.C. § 1972(1)(A)—is supported by case law from this district. In the recent case of *Sharkey v. Security Bank & Trust Co.*, 651 F.Supp. 1231 (D.Minn.1987), the court analyzed, under facts remarkably similar to those present in this case, the question of whether a plaintiff can establish a claim under 12 U.S.C. § 1972 by showing the existence of a tying arrangement but without showing that such arrangement was anti-competitive in nature. In *Sharkey*, plaintiff alleged that defendant required plaintiff to purchase certain real estate from defendant as a condition to obtaining from defendant a loan to finance plaintiff's mortgage of other real estate. Defendant moved the court for summary judgment based on plaintiff's inability to prove the financing arrangement was anti-competitive in nature. The court in *Sharkey* found, based on the language of section 1972, its legislative history, and case law from other jurisdictions, that tying arrangements involving banks are *per se* unlawful under section 1972. *Sharkey*, 651 F.Supp. at 1232. The court held that

> under section 1972, a successful plaintiff need only show that a bank (1) extended

credit; (2) on the condition or requirement; (3) that the plaintiff obtain some additional property, other than a loan, discount, deposit, or trust service, from the bank; the plaintiff need not make any showing of anti-competitive effects. *Sharkey*, 651 F.Supp. at 1232.[9] Finding these elements satisfied in the case before it, the court in *Sharkey* denied defendant's motion for summary judgment. *Id.*

This decision finds ample support in rulings of courts in other jurisdictions. *See Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) (purpose and effect of section 1972 is to apply the general principles of the Sherman Antitrust Act to the field of commercial banking, without requiring plaintiffs to establish either the economic power of a bank or the specific anti-competitive effects of tying arrangements); *Parsons Steel, Inc. v. First Alabama Bank of Montgomery*, 679 F.2d 242, 245 (11th Cir.1982) (same); *Costner v. Blount National Bank of Maryville, Tennessee*, 578 F.2d 1192, 1196 (6th Cir.1978) (BHCA establishes *per se* rule and provides the same penalties for tying arrangements as the Sherman Act, but without the necessity of proving any economic power in the market for the tying product); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 556 n. 9 (S.D.N.Y.1985) ("the BHCA does not require a plaintiff to prove that the arrangement in question had an anti-competitive effect. Instead, the BHCA establishes a *per se* rule obviating the need for a specific inquiry into the anti-competitive effect of the prohibited tie."); *but see FDIC v. Linn*, 671 F.Supp. 547, 561–62 (N.D.Ill.1987) (analogizing to section 3 of the Clayton Act, 15 U.S.C. § 14, which requires an anti-competitive effect).

The foregoing analysis of the legislative history surrounding 12 U.S.C. § 1972(1)(A) and case law interpreting that legislative history demonstrates that plaintiffs need not establish that the tying arrangement alleged herein caused an anti-competitive effect. Accordingly, the Court finds that the Bank is not entitled to summary judgment on this ground.

## C. Unusual Banking Practice—Benefit to Bank

The Bank contends it is entitled to summary judgment on plaintiffs' BHCA claim because plaintiffs cannot prove that the alleged tying arrangement was an unusual banking practice or that the arrangement benefited the Bank. The Court finds that the Bank is not entitled to summary judgment on these grounds.

As to the question of whether the alleged tying arrangement was an unusual practice, plaintiffs have submitted the affidavit of Richard D. Hillyer, a banking expert with years of experience in commercial lending. Hillyer states based on his experience in the banking industry that it is a very unusual banking practice for a bank, as a condition of giving a loan to a customer on one property, to require that customer to purchase a property out of the bank's real estate portfolio. Affidavit of Richard D. Hillyer at par. 3. Hillyer avers that such a practice is clearly outside the realm of traditional banking practices. *Id.* Hillyer's affidavit testimony strongly refutes the Bank's claim that the transaction in issue here was a usual practice and precludes the granting of summary judgment on that issue.

The Bank's claim that plaintiffs cannot prove the alleged tying arrangement benefited the Bank is similarly without merit.

9. The only Eighth Circuit case to review 12 U.S.C. § 1972 does not reach a contrary conclusion. In *Duryea v. Third Northwestern National Bank of Minneapolis*, 606 F.2d 823 (8th Cir. 1979), the court did not reach the issue of whether a plaintiff proceeding pursuant to 12 U.S.C. § 1972 must show anti-competitive effect. The court in *Duryea* found that plaintiff had failed to allege any type of tying arrangement prohibited by section 1972. *Duryea*, 606 F.2d at 826. Thus the court, noting generally that the

BHCA prohibits "anti-competitive practices which requires bank customers to accept or provide some other service or product ... in order to obtain the bank product or service they desire," affirmed dismissal of plaintiff's BHCA claim. *Duryea*, 606 F.2d at 825–26, *quoting* 1970 U.S.Code Cong. & Admin.News 5519, 5535. The court did not analyze whether a plaintiff must prove *anti-competitive effect in order to prevail* under 12 U.S.C. § 1972(1)(A).

It is intuitively obvious that by enabling itself to liquidate a property it had held since April 1983, the Bank received some benefit. Further, if as plaintiffs allege the true value of the Glencoe property is $150,-000, the Bank received a $100,000 benefit by selling the property to plaintiffs for $250,000. At a minimum, it is apparent that a genuine issue of material fact exists as to whether the Bank benefited from the alleged tying arrangement.

### D. Conclusion

Based on the foregoing, the Court finds that the Bank should not prevail on its motion for summary judgment on plaintiffs' claim under 12 U.S.C. § 1972(1)(A). The legislative history surrounding section 1972 indicates that plaintiffs need not prove anti-competitive effect in order to prevail under this statute. Further, genuine issues of material fact exist regarding the existence of a tying arrangement and whether the arrangement was an unusual practice that benefited the Bank. Because summary judgment is not appropriate on plaintiffs' federal claim, the Court need not determine whether dismissal of plaintiffs' pendent state claims is appropriate.

### II. *Plaintiffs' Motion to Strike*

On January 11, 1988, the Bank filed a third-party complaint for indemnification against Larkin, Hoffman and against Stoltman individually on the grounds that the legal opinion prepared by Stoltman for the Bank was negligently prepared. The Bank alleged that the opinion included a warranty that the entire loan transaction did not violate either federal or state law. The Bank accordingly claimed that if it is liable to plaintiffs under 12 U.S.C. § 1972 then it is entitled to indemnification and reimbursement from the third-party defendants for their negligence, breach of contract and misrepresentation.

In its order of May 27, 1988, the Court granted summary judgment in favor of the third-party defendants on the Bank's third-party complaint. The Court found that the third party defendants were under no duty to advise the Bank of the applicability of the anti-tying statute. The Court further noted that the opinion letter as written is technically correct in that the anti-tying statute is not a defense to the loan obligations but rather represents an independent cause of action.

As part of its answer to plaintiffs' complaint, the Bank asserted the following affirmative defenses:

39. With respect to plaintiffs' claim for violation of 12 U.S.C. § 1972(1)(A), if defendant breached said statute, plaintiffs are estopped to complain of any damages, in that plaintiffs conspired among themselves and with others to induce defendant to breach 12 U.S.C. § 1972(1)(A) and are *in pari delicto.*

40. Plaintiffs' claim for relief under 12 U.S.C. § 1972(1)(A) is barred by the applicable doctrines of estoppel and waiver, in that plaintiffs proposed the structure of the loan transaction and represented to defendant, through plaintiffs' counsel, that the execution, delivery, and performance by the plaintiffs of the Note, Mortgage and other loan documents were legal and binding obligations of the plaintiffs, and valid and enforceable against the plaintiffs, and each of them, in accordance with their terms.

Defendant's Answer par. 39–40. Plaintiffs now move the Court to strike these defenses pursuant to Fed.R.Civ.P. 12(f) or in the alternative for an order *in limine* preventing defendant from raising the opinion letter as a defense at trial. Plaintiffs argue that the Court, by way of its previous order, determined as a matter of law that the Bank had no claim based on the opinion letter. Thus plaintiffs seek to prevent introduction of the opinion letter as a defense.

Fed.R.Civ.P. 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

A rule 12(f) motion to strike defenses is a drastic remedy which is disfavored by the courts and is infrequently granted. *H.J., Inc. v. Northwestern Bell Telephone Co.,* 648 F.Supp. 419, 422 (D.Minn.1986), *aff'd,* 829 F.2d 648 (8th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988). A rule 12(f) motion to strike will be granted only where the Court is convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed. *H.J., Inc.,* 648 F.Supp. at 422.

■ The Court will deny plaintiffs' motion to strike the affirmative defenses stated in paragraphs 39 and 40 of defendant's answer. It is clear from a reading of paragraphs 39 and 40 that the affirmative defenses stated therein go beyond reference to the Larkin, Hoffman opinion letter. Accordingly, it would be inappropriate to strike the defenses contained in paragraphs 39 and 40 based solely on the opinion letter.

■ As an alternative to their motion to strike, plaintiffs present a motion *in limine* which in essence asks that the Court preclude introduction of the opinion letter and any testimony relating to the opinion letter. This motion will be granted based on Fed.R.Evid. 403. Fed.R.Evid. 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In this case, substantial risk of confusion exists with respect to the opinion letter which substantially outweighs its probative value. The Court finds that in order to eliminate this risk of confusion and to protect the integrity of the Court's May 27, 1988 order, defendant should be precluded from introducing the opinion letter or otherwise referring to the letter at trial.

Based on the foregoing, and upon all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that:

1. defendant's motion for summary judgment is denied;

2. plaintiffs' motion to strike certain of defendant's affirmative defenses is denied; and

3. plaintiffs' motion *in limine* is granted.