**Edward J. LIBBY, Plaintiff,**

v.

**FIRSTAR BANK OF SHEBOYGAN, N.A., Defendant.**

**No. Civ.A. 97–10463–RCL.**

United States District Court, D. Massachusetts.

April 21, 1999.

Mark W. Corner, Rubin & Rudman, Boston, MA, for Edward J. Libby, plaintiff.

---

Joseph L. Kociubes, Bingham, Dana & Gould, Boston, MA, Allison R. Handel, Bingham, Dana & Gould, Boston, MA, for Firstar Bank of Sheboygan, N.A., defendant.

· Joseph L. Kociubes, Bingham, Dana & Gould, Boston, MA, Allison R. Handel, Bingham, Dana & Gould, Boston, MA, for Firstar Bank of Sheboygan, N.A., counterclaimant.

Mark W. Corner, Rubin & Rudman, Boston, MA, for Edward J. Libby, counter-defendant.

## ORDER

LINDSAY, District Judge.

Report and Recommendation Accepted.

## *REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 17)*

COLLINGS, Chief United States Magistrate Judge.

### *I. Introduction*

Presently before the Court for resolution is the defendant Firstar Bank of Sheboygan, N.A.'s ("Firstar's") motion for summary judgment.[1] The case arises out of an alleged agreement by Firstar to loan money to plaintiff Edward J. Libby ("Libby") to enable Libby to buy equipment for his trucking business. Libby contends that Firstar agreed to loan the necessary funds to him if he would locate certain trucks held by an unrelated defaulted Firstar borrower. Libby contends this alleged agreement violated the anti-tying provision of the Federal Bank Holding Company Act, 12 U.S.C. § 1972, and the Massachusetts prohibition against unfair and deceptive trade acts, Mass.Gen.Laws ch. 93A. Firstar argues in the present motion that even if the facts alleged by Libby are true, both claims fail as a matter of law.

### *II. Statement of Uncontroverted Facts*

For purposes of this motion, the uncontroverted facts are as follows. Firstar is a Wisconsin bank to which the Independent Truck Owner Operators Association ("I-TOO") referred its members for transportation lending. # 18, Exh. A at 12–13. I-TOO's referral program was reviewed and endorsed by the Small Business Administration ("SBA"). *Id.* at Exh. B.

Libby was an independent trucker who I-TOO referred to Firstar for potential financing. # 18, Exh. C at 16–17. Libby had borrowed funds from Firstar for the purchase of other equipment, and his loan history reveals a number of defaults. *Id.,* Exh. G–L; Exh. C at 47–52, 60–61; Exh A at 52–53, 91–92. Still, in the spring of 1996, Libby approached Firstar for financing for new equipment. *Id.,* Exh. C at 65–66. Though no loan documents were executed, Libby claims that Firstar agreed to loan him the funds he requested if he would locate certain trucks held by another defaulted borrower. *Id.,* Exh. C at 75–76, 83. Libby allegedly agreed to locate the defaulted borrower's trucks, and even went so far as to hire an individual who performed repossessions. *Id.,* Exh. C at 75. Another equipment dealer allegedly offered Libby the opportunity to purchase two trucks on credit, but Libby said he turned down the offer at Firstar's urging since Firstar had offered to finance three trucks. *Id.* at 85–86.

Libby was not able to locate the defaulted borrower's two trucks, and he claims that as a result, Firstar refused to loan the money allegedly promised to him. *Id.,* Exh. C at 88. Libby attempted to obtain alternative financing but was unsuccessful. *Id.,* Exh. C at 89–90. Libby claims that as a result of Firstar's refusal to loan him the promised funds, he was unable to purchase three trucks that would have earned approximately $50,000 each per year for him after expenses. *Id.,* Exh. C at 93. He claims he had planned to use the trucks to

---

1. The motion has been referred to the undersigned for the preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

transport produce for a relative in the produce business, who promised him that if he obtained some trucks, "he would keep them working seven days and seven nights a week." *Id.*, Exh. C at 16. Libby currently owns one truck, but he is using it for storage in his seafood distribution business temporarily, while he locates a storage building. *Id.*, Exh. C at 94.

### III. Summary Judgment Standard

When considering whether to grant summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." *International Ass'n of Machinists v. Winship Green Nursing Ctr.*, 103 F.3d 196, 205 (1 Cir., 1996); *see also Lawton v. State Mut. Life Assurance Co. of America*, 101 F.3d 218, 222–23 (1 Cir., 1996); *Borschow Hosp. & Medical Supplies v. Cesar Castillo, Inc.*, 96 F.3d 10, 12 (1 Cir., 1996); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1 Cir., 1996); *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 608 (1 Cir., 1996).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1 Cir., 1997); *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1 Cir., 1996); *Roche*, 81 F.3d at 253. In weighing whether a factual dispute is

"material", the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Vinick v. Commissioner of Internal Revenue*, 110 F.3d 168, 171 (1 Cir., 1997); *Sanchez*, 101 F.3d at 227; *Roche*, 81 F.3d at 253. "Thus the substantive law defines which facts are material." *Sanchez*, 101 F.3d at 227 (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. *See International Ass'n of Machinists*, 103 F.3d at 205 (quoting *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 794 (1 Cir., 1992) ("The core purpose of the summary judgment procedure is to 'pierce the boilerplate of the pleadings' and evaluate the proof to determine whether a trial will serve any useful purpose."). Rather, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### IV. Analysis

Defendant argues it is entitled to summary judgment because even if all of plaintiff's allegations are true, both the federal and the state claims are insufficient as a matter of law. At oral argument on this motion, defendant's counsel agreed that if the federal claim survives summary judgment, so necessarily does the state claim (and conversely, if the federal claim fails, so does the state claim). Thus, the Court will start and end its analysis with the

claim under the Federal Bank Holding Company Act.

Title 12 United States Code section 1972 provides in part as follows:

(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

(B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;

(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;

(D) the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or

(E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall rea-sonably impose in a credit transaction to assure the soundness of the credit. The Board[2] may by regulation or order permit such exceptions to the foregoing prohibition ... as it considers will not be contrary to the purposes of this chapter.

12 U.S.C. § 1972.

Plaintiff contends defendant violated subsection (1)(C) of section 1972, because the requirement that he locate two trucks held by another debtor and wanted by Firstar for repossession was an additional service and was "not related to and usually provided in connection with a loan, discount, deposit, or trust service." 12 U.S.C. § 1972(1)(C).[3]

Firstar does not argue that requiring a borrower to locate property the bank wishes to repossess is "related to and usually provided in connection with a loan, discount, deposit, or trust service."[4] Rather, it argues that the loan term in question is excepted from the prohibition in § 1972(1)(C) because it is not "anticompetitive."

Section 1972 specifically provides that any exceptions to its general prohibitions are to be spelled out by the Federal Reserve Board in regulations or orders, 12 U.S.C. § 1972(1) ("The Board may by regulation or order permit such exceptions to the foregoing prohibition ... as it considers will not be contrary to the purposes of this chapter."); and 12 C.F.R. § 225.7 sets out the exceptions which have been adopted by the Federal Reserve Board.[5] But nowhere in 12 C.F.R § 225.7 can an exception be found which necessarily

---

**2.** The language refers to the Federal Reserve Board; see 12 U.S.C. § 1971; 12 U.S.C. § 1841.

**3.** Title 12 U.S.C. § 1975 grants a federal civil remedy to any person injured by any tying arrangement prohibited in § 1972.

**4.** In any event, whether such requirements are related to or usually provided in connection with a loan would be a question of fact; the Court does not have uncontroverted evi-dence before it at this stage of the litigation to show whether or not such requirements are routinely imposed.

**5.** 12 C.F.R. § 225.7(a) states in part:

Purpose: This section establishes exceptions to the anti-tying restrictions of section 106 of the Bank Holding Company Act Amendments of 1970 (12 U.S.C. §§ 1971, 1972(1)). These exceptions are in addition to those in section 106.

would allow the loan practice at issue in this case.[6]

Absent any statutory or regulatory support for its position, Firstar goes on to argue that the loan term in question did not violate section 1972 because it was not "anticompetitive." Firstar cites a number of circuit court cases for the proposition that in order for a banking practice to violate section 1972(1), it not only must violate the literal language of the statute but also must be shown to be an anticompetitive practice. *See, e.g., Doe v. Norwest Bank Minnesota*, 107 F.3d 1297 (8 Cir., 1997); *B.C. Recreational Indus. v. First Nat'l Bank*, 639 F.2d 828 (1 Cir.1981).

In *B.C. Recreational Industries*, plaintiff had entered into a factoring arrangement with the defendant bank and had assigned its accounts receivable to the defendant as collateral. When the bank took the position that plaintiff's financial condition was precarious, the bank imposed the additional condition that the plaintiff employ a specific individual as a business advisor. After its business took an additional downturn, plaintiff sued defendant under section 1972.

In determining whether the defendant bank could be held liable for requiring the plaintiff to hire the business advisor, the First Circuit cited the legislative history of section 1972, along with case law from other circuits interpreting the statute, which shows the legislation "was aimed at preventing the use of the economic power of a bank to lessen competition or engage in unfair competitive practices." *B.C. Recreational Indus.*, 639 F.2d. at 831 (citing

S.Rep. No. 1084, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News, pp. 5519, 5535).

> [T]he tying arrangements prohibited are those that require bank customers to accept or provide other services or products or refrain from dealing with other parties. *Duryea v. Third Northwestern Nat'l Bank*, 606 F.2d 823, 825 (8th Cir. 1979); *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 58 (5 Cir., 1978). (additional citation omitted)

*B.C. Recreational Indus.*, 639 F.2d at 832.

The First Circuit concluded that the bank had not violated section 1972 because the requirement in question was a traditional banking practice that was specifically excepted by the Act. *Id.*

It seems, then, that Firstar overstates the holding of *B.C. Recreational* when it contends the case requires an *additional* showing that the practice in question be anticompetitive. Rather, *B.C. Recreational* only restates the basic principle underlying section 1972, that being that traditional banking practices remain protected.[7] Any discussion by the Court of "anticompetitive" practices does not appear to impose an additional requirement; rather, the citation to the legislative history seems only an exercise in determining which banking practices are traditional and which are not. Those which are traditional are, by definition, not anticompetitive or unfair. Those which are not traditional or are not otherwise excepted by the Federal Reserve Board's regulations most likely[8]

---

6. Subsection (b)(1)(ii) does allow banks to require some additional service to its affiliates from borrowers, but only to the extent the bank could require that service be provided to the bank itself. Other exceptions include those involving combined-balance discounts, 12 C.F.R. § 225.7(b)(2); and those involving foreign customers, 12 C.F.R. § 225.7(b)(3).

7. Again, Firstar does not contend here that the practice in question was a traditional banking practice; *see* footnote 3, *supra.*

8. That is not to say that any tie is a per se violation of section 1972. Such a view has been rejected by at least one other circuit; *see Doe,* 107 F.3d at 1305 n. 7 (citing *JST Properties v. First Nat'l Bank,* 701 F.Supp. 1443, 1449 (D.Minn.1988); *Sharkey v. Security Bank & Trust Co.,* 651 F.Supp. 1231, 1232 (D.Minn. 1987)). But certainly the fact that the Federal Reserve Board has not specifically exempted a particular practice from the anti-tying prohibitions in section 1972 is some indication that the practice is prohibited.

are anticompetitive and/or unfair, and therefore prohibited.

■ Furthermore, Firstar's characterization of the legislative history and the meaning it ascribes to "anti-competitive" is unduly narrow.[9] The legislative history cited by the *B.C. Recreational* Court shows that section 1972 was intended to prevent "the use of the economic power of a bank to lessen competition *or to engage in unfair competitive practices." Id.* at 831 (emphasis added). Firstar focuses on the first clause of this statement of purpose and contends Libby has failed to show how the practice in question would lessen competition. But Firstar ignores the second clause of the statement, that which prohibits *unfair* competitive practices. Thus, even if no "anticompetitive" practice is shown in the sense that the practice did not "lessen competition," the question remains whether the practice in question might be considered an unfair competitive banking practice. And Firstar does not address this question.

■ Indeed, there is a basis for arguing that the practice in which Firstar engaged was unfair to Firstar's competitors who might be in the market to offer loans to Libby. They would be required to offer only those inducements which are permitted by traditional banking practices and, in fact, might not be able to offer a rate satisfactory to Libby because of his prior loan history. Firstar got the business because it was able to offer a package which required Libby to do something that may not have been within the traditional practices of banks. Whether a finder of fact would find the conduct in which Firstar engaged to be an "unfair competitive practice" is another matter; it is enough for present purposes to state that there is sufficient evidence that it was to preclude an award of summary judgment to Firstar. Merely showing that the practice is not "anti-competitive", i.e., that it does not

lessen competition by eliminating players from the field, is simply not enough on this record to support the entry of summary judgment.

The cases Firstar cites from other jurisdictions are not to the contrary. For instance, the Court in *Doe* rejected a section 1972 claim because the plaintiff had "not alleged an anti-competitive practice." But that court explained that the "anti-competitive practice" prohibited by section 1972 included any practice that " 'results in *unfair* competition or could lessen competition.' " *Doe,* 107 F.3d at 1305 (quoting *Palermo v. First Nat'l Bank & Trust Co.,* 894 F.2d 363, 368 (10 Cir., 1990)) (additional citation omitted). Again, Firstar focuses its argument on the requirement that the practice in question must lessen competition; it fails to argue alternatively that that practice might or might not result in unfair competition.

The two other cases cited by Firstar lend no additional support to its position. *Exchange Nat'l Bank v. Daniels,* 768 F.2d 140 (7th Cir.1985), is inapposite because it does not deal with subsection (C) of the anti–tying provision; the case instead interprets and applies 12 U.S.C. § 1972(1)(A). *Id.* at 143. And in *Palermo,* the Tenth Circuit only decided that the practice in question was a traditional banking practice, and therefore specifically exempt from the prohibitions in section 1972. *Palermo,* 894 F.2d at 369–70. Indeed, much of the *dicta* in *Palermo* supports plaintiff's view of the statute. The court seemed to equate the "anticompetitive" requirement with any requirement which was not a traditional banking practice.

The district court properly granted summary judgment in favor of [the bank] on plaintiffs' bank tying and reciprocity claims because the plaintiffs were unable to make a showing that the practice

---

9. One Court has noted that the use of the term "anti-competitive" in the legislative history is "confusing." *Nordic Bank, PLC v.*

*Trend Group, Ltd.,* 619 F.Supp. 542, 556 n. 9 (S.D.N.Y., 1985).

complained of was *anticompetitive, that the practice was not within the exemption of traditional banking practices in connection with loans.*

*Id.* at 370 (emphasis added).

Most notably, the court made the following observation:

> Conditioning the extension of credit to a bank customer on the requirement that the customer participate in the bank's bad loans to an unrelated customer surely is an anticompetitive practice proscribed by § 1972.

*Id.* at 369 (citing *Nordic Bank PLC v. Trend Group,* 619 F.Supp. 542, 557 (S.D.N.Y.1985)).

Surely under the facts as alleged by the plaintiff, Firstar would be liable if the Tenth Circuit's observations are true, for Firstar did require Libby to "participate in the bank's bad loans to an unrelated customer" by requiring him to assist in the repossession of property securing those bad loans.

But this Court need not go that far. For now, the Court need only hold that Firstar is not entitled to summary judgment. The simple fact that Libby has failed to show the practice in question would lessen competition is insufficient to justify a judgment in Firstar's favor.

### V. Recommendation

Since Firstar has failed to show that the facts alleged by plaintiff are insufficient to support a claim under 12 U.S.C. § 1972(1)(C) as a matter of law, I RECOMMEND that Defendant Firstar's Motion for Summary Judgment (# 17) be DENIED.

### VI. Review by the District Judge

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Clerk within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).